3 A.3d 1229 (2010)
416 N.J. Super. 248
Mark TANNEN, Plaintiff-Respondent/Cross-Appellant,
v.
Wendy TANNEN, Defendant-Appellant/Cross-Respondent,
v.
Wendy Tannen Trust, Wendy G. Tannen, Leonard J. Phillips and Gloria Phillips, as Trustees, Phillips Family Dynasty Trust, Wendy G. Tannen and Robert A. Bertha, CPA, as Trustees, Blake Gordon Tannen Trust, Wendy G. Tannen, as Trustee, and Elizabeth Rose Tannen Trust, Wendy G. Tannen, as trustee, Third-Party Defendants.
Mark Tannen, Plaintiff-Respondent/Cross-Appellant,
v.
Wendy Tannen, Defendant,
v.
Wendy Tannen Trust, Wendy G. Tannen, Leonard J. Phillips and Gloria Phillips, as Trustees, Phillips Family Dynasty Trust, Wendy G. Tannen and Robert A. Bertha, CPA, as Trustees, Blake Gordon Tannen Trust, Wendy G. Tannen, as Trustee, and Elizabeth Rose Tannen Trust, Wendy G. Tannen, as trustee, Third-Party Defendants-Appellants.
Nos. A-4185-07T1, A-4211-07T1
Superior Court of New Jersey, Appellate Division.
Argued January 12, 2010.
Decided August 31, 2010.
*1231 Richard H. Singer, Jr., argued the cause for appellant/cross-respondent (Skoloff & Wolfe, P.C., attorneys; Mr. Singer and Patrick W. Harrington, Livingston, on the brief).
*1232 Edward S. Snyder argued the cause for respondent/cross-appellant (Snyder & Sarno, L.L.C., attorneys; Mr. Snyder, of counsel and on the brief; Rawan Hmoud, on the brief).
Jay J. Rice argued the cause for appellants in A-4211-07T1 (Nagel Rice LLP, attorneys; Mr. Rice, of counsel and on the brief; Randee M. Matloff, Roseland, on the brief).
Before Judges WEFING, MESSANO and LEWINN.
The opinion of the court was delivered by
MESSANO, J.A.D.
After nearly eighteen years of marriage, plaintiff Mark Tannen filed for divorce from his wife, defendant Wendy G. Tannen. The matter was tried only on the economic issues of equitable distribution, alimony, and child support, the parties having entered into a custody and parenting-time agreement regarding their two children while the litigation was pending. Immediately prior to the scheduled trial date, the judge ordered plaintiff to join four trusts in which either defendant or the couple's children were beneficiaries as third-party defendants.[1] The matter was tried over the course of several months and resulted in a final judgment of divorce (JOD) issued on January 23, 2008.
In A-4185-07, defendant appeals from: 1) paragraph 8E of the JOD that exempted from equitable distribution most of the monies contained in a certain investment account in plaintiff's name (the Vanguard account); 2) the amount of permanent alimony awarded to her pursuant to paragraph 13 of the JOD; 3) the amount of child support awarded to her pursuant to paragraph 14 of the JOD; and 4) paragraph 11 of the JOD that required the trustees of the WTT to pay her $4000 per month.
The Trusts also appeal in A-4211-07. They contend that: 1) the judge erred in ordering that they be joined in the action and by forcing them to proceed without discovery; 2) plaintiff lacked standing to bring any claims against them; 3) the judge erred in ordering the WTT to distribute $4000 per month to defendant; 4) the alimony award to defendant was based upon an "improper[ ] calculat[ion] [of] the amount of income available to [plaintiff]"; 5) any claims against the Children's Trusts should have been dismissed; 6) the judge erred in concluding defendant owed a "fiduciary duty to the spouse divorcing her"; 7) plaintiff's claims should be dismissed based upon his "unclean hands and dishonesty during ... trial"; and 8) the Trusts should be awarded counsel fees on appeal.
Plaintiff cross-appeals. He contends that the judge erred in calculating the alimony award; in failing to "award[ ] [him] retroactive relief from his pendente lite support obligation ..."; and in denying his request for counsel fees because defendant "unnecessarily protracted the litigation" after the Trusts "were properly joined."
The appeals were calendared back-to-back and argued together; we have consolidated *1233 them for purposes of a single opinion. After consideration of the arguments raised in light of the record and applicable legal standards, we affirm in part, reverse in part, and remand the matter for further proceedings consistent with this opinion.

I.

(A)
We begin by recounting some of the procedural history and factual background adduced at trial regarding the involvement of the Trusts in this litigation. Our analysis and resolution of the arguments raised by defendant and the Trusts in this regard significantly advance our resolution of the corollary contentions raised by the parties.
Plaintiff and defendant were married on December 4, 1988. Plaintiff was fifty-years old and defendant was forty-eight years old at the time of trial in 2007; their two children were seventeen years old and fourteen years old. Plaintiff and defendant, both college graduates, were involved in real estate sales and marketing; however, defendant left the workforce when the couple married. Shortly thereafter they moved into a 4000 square-foot home on two acres in Saddle River that was purchased by defendant's father and titled in defendant's name.
In 2000, defendant's parents, Leonard and Gloria Phillips, settled the WTT, an irrevocable trust with defendant as the sole beneficiary and defendant and her parents as co-trustees. Section 3 of the WTT provided
The Trustees shall apply and distribute the net income and corpus of the Trust... to the beneficiary ... in the following manner:
. . . .
(A) The Trustees ... shall pay over to or apply for the benefit of the beneficiary's health, support, maintenance, education and general welfare, all or any part of the net income therefrom and any or all of the principal thereof, as the Trustees shall determine to be in the beneficiary's best interests, after taking into account the other financial resources available to the beneficiary for such purposes that are known to the Trustees. The term "best interests" shall include, without limitation and in the Trustees' sole discretion as to need and amount, payments from the Trust to help meet educational expenses, medical expenses or other emergency needs of the beneficiary, to enable the beneficiary to purchase a home, and to enable the beneficiary to enter into a business or profession .... The time or times, amount or amounts, manner and form in which said distributions shall be made, or sums so expended, shall be left to the sole discretion of the Trustees and shall be made without court order and without regard to the duty of any person to support such beneficiary. ...
. . . .
(C) Notwithstanding any other provision in this Trust Agreement to the contrary, it is the express intention of the Grantors in creating this Trust that the beneficiary shall not be permitted, under any circumstances, to compel distributions of income and/or principal prior to the time of final distribution.

[Emphasis added.]
The WTT also contained a "spendthrift" provision, Section 14, which provided:
Distribution of both income and principal shall be made as directed under the terms of this Trust, and the beneficiary shall not have the right to alienate, anticipate, pledge, assign, sell, transfer or encumber such income or principal distribution without first procuring the written consent of the Trustees. Any endeavor of any such beneficiary to circumvent this direction in any manner shall be wholly disregarded *1234 by the Trustees, and shall be null and void.

[Emphasis added.]
At the time of trial, the corpus of the WTT included shares of mutual funds and stock valued at $1,155,877, a commercial property located in Clifton from which the trust received rental income, and the Saddle River home that had been conveyed from defendant to the trust. The WTT paid the annual real estate taxes on that home, approximately $13,000, and half the annual cost of a housekeeper, approximately $13,000; the home was free of any mortgage. The WTT also paid for capital improvements on the house, including a two-story addition, a new roof, driveway, kitchen, and deck, some new floors, and landscaping and pool renovation. In the four years prior to trial, the WTT generated at least $124,000 per year in investment and rental income.
Beyond those expenses, the WTT paid for the children's private school tuition for two years. According to defendant and her father, who testified at trial, she asked for money from the WTT to go on a trip with some friends, but her father refused.[2] Defendant made no other requests for funds from the WTT.
Defendant's father also settled the Children's Trusts, both of which were irrevocable and for the benefit of the parties' son and daughter. Each trust provided that the trustee, exercising his or her sole discretion, could make distributions that were necessary on behalf of the children. Defendant's father was the original trustee of both Children's Trusts, though defendant had recently been substituted as trustee. Each trust instrument clearly indicated that the creation of the Children's Trusts, and any distributions made therefrom, were not intended to relieve the parties from their legal obligations to support their children. At the time of trial, there had been no distribution from either of the Children's Trusts.
On March 21, 2007, the day before trial was scheduled to begin, defendant filed a motion in limine seeking to exclude any income generated by the Trusts as an asset for alimony and child support purposes. In an order dated April 4, the judge denied the motion without prejudice to defendant renewing her objection at trial. A second order dated the same day provided that the Trusts were "designated parties" to the action, and ordered plaintiff to file a third-party complaint against the Trusts. On April 12, plaintiff filed an amended complaint naming the Trusts as third-party defendants. The Trusts filed an answer on May 23.
On July 20, the Trusts moved to dismiss the complaint against them but the judge denied the application without prejudice. The Trusts renewed their motion when the trial commenced on August 6 and sought an adjournment for discovery. The judge denied both applications. Thereafter, the Trusts participated throughout the trial.

(B)
On December 20, the judge issued his written opinion following trial. He noted that "[a]limony orders are based upon actual income, potential to generate income, as well as imputation of income." The judge further observed that "[d]ivorcing spouses have a fiduciary duty toward each other[,]" and that defendant "ha[d] a fiduciary duty to pursue her option to seek income under the terms of the [WTT]. Upon her failure to do so, income should *1235 be properly imputable to her under the theory of fiduciary duties arising from the marriage." The judge further found that defendant's "reluctance or failure to pursue income from the [WTT] constitute[d] unreasonable action on her part and a breach of fairness in her fiduciary duty." As a result, he reasoned that income from the WTT was "treatable as income to [defendant], under the statutory criteria, in order for the [c]ourt to determine a fair amount of alimony to be paid by [plaintiff]."
The judge further reasoned that "[u]nder certain circumstances," he "ha[d] the authority to compel a distribution of income to [defendant]," stating that "[w]here a trustee acts outside the bounds of reasonable judgment, the court will interfere with the administration of a trust." The judge offered the following analysis:
While New Jersey courts have generally followed the Restatement of Law, our courts have determined that it would not be equitable for a beneficiary to maintain assets held in trust and not provide for his or her family, and similarly would not be equitable for a beneficiary to contract for services or goods and receive same but not remit payment. It is reasonable to conclude by analogy that a court may require income available to a beneficiary to be paid to that beneficiary in the process of calculating alimony and child support. If such income is imputed to the beneficiary and the trustee refuses to act accordingly, the beneficiary would certainly be unjustly enriched if she were to first receive alimony, have a limited child support obligation and ultimately receive the entire trust income anyway.
The judge concluded that under the Restatement (Third) of Trusts § 50 comment d(2) (2003),[3] the terms "support and maintenance and the language of the trust require[d] the trustee to disperse [sic] such sums as are necessary to maintain the lifestyle of the beneficiary.... This language also support[ed] a conclusion that benefits from the trust must be first considered before an alimony obligation is determined." The judge indicated that if the trustees of the WTT failed to "comply with th[e] Court's directive that [defendant] receive[ ] [monthly income] toward her health, maintenance, support and general welfare, that refusal w[ould] be deemed... an abuse of discretion and ... the trustees w[ould] be ordered to make such distributions."
Paragraph 11 of the JOD filed on January 23, 2008, imputed $4000 in income per month to defendant from the WTT, further ordered the WTT to make this payment to her and to continue making the other payments on the marital home and for the housekeeper's expenses, and further provided that "in the event the trustees of the [WTT] d[id] not comply with the Court's directive ... that refusal w[ould] be deemed ... an abuse of discretion...." Paragraph 12 of the JOD imputed $25,000 of earned income to defendant; no appeal is taken from this portion of the JOD. Paragraph 13 of the JOD set plaintiff's permanent monthly alimony obligation at $4500.

(C)
The Trusts argue that the judge erred in joining them as parties to the litigation, imputing income from the WTT to defendant, and in further ordering the WTT to pay $4000 a month towards defendant's support. As a result, they contend that plaintiff's alimony obligation was improperly calculated.
Defendant relies upon the arguments raised by the Trusts, and further argues *1236 that the judge erred in assessing the testimony of plaintiff's lifestyle expert, Thomas J. Hoberman, and her lifestyle expert, Howard Rauch, thus further improperly calculating the alimony award.
Plaintiff argues that the judge properly imputed income to defendant from the WTT, and thereafter properly included that income in the alimony calculation, though, in his cross-appeal, plaintiff contends that the judge failed to impute a sufficient amount of income from the WTT to defendant.
We state some basic principles regarding alimony and the factors that a trial judge must consider in making any award. N.J.S.A. 2A:34-23 provides that in "any matrimonial action ... the court may make such order as to the alimony or maintenance of the parties, ... as the circumstances of the parties and the nature of the case shall render fit, reasonable and just...." N.J.S.A. 2A:34-23(b) sets forth a non-exhaustive list of thirteen factors that the judge should consider in making any award. One such factor is "[t]he income available to either party through investment of any assets held by that party[.]" N.J.S.A. 2A:34-23(b)(11) (emphasis added).
"`[T]he goal of a proper alimony award is to assist the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the marriage.'" Steneken v. Steneken, 183 N.J. 290, 299, 873 A.2d 501 (2005) (quoting Crews v. Crews, 164 N.J. 11, 16, 751 A.2d 524 (2000)). "The supporting spouse's obligation is set at a level that will maintain that standard." Innes v. Innes, 117 N.J. 496, 503, 569 A.2d 770 (1990) (citing Lepis v. Lepis, 83 N.J. 139, 150, 416 A.2d 45 (1980)).
Although the supporting spouse's income earned through employment is central to the ... inquiry, it is not the only measure of the supporting spouse's ability to pay that should be considered by a court. Real property, capital assets, investment portfolio, and capacity to earn by "diligent attention to ... business" are all appropriate factors for a court to consider in the determination of [an] alimony ... [award].
[Miller v. Miller, 160 N.J. 408, 420-21, 734 A.2d 752 (1999) (quoting Innes, supra, 117 N.J. at 503, 569 A.2d 770) (in turn quoting Bonanno v. Bonanno, 4 N.J. 268, 275, 72 A.2d 318 (1950)).][4]
These principles apply with equal force to the supported spouse, since an appropriate alimony award must also consider "the supported spouse's ability to contribute to his or her own support...." Crews, supra, 164 N.J. at 27, 751 A.2d 524 (citation omitted); see also Aronson v. Aronson, 245 N.J.Super. 354, 364, 585 A.2d 956 (App. Div.1991) ("When support of an economically dependent spouse is at issue, the general considerations include the ability of that spouse to contribute to his or her needs.").
Citing Miller, supra, the trial judge first concluded that defendant had a "fiduciary duty" to plaintiff that obligated her to seek distributions from the WTT to support her lifestyle after the divorce. We disagree with this characterization of defendant's responsibility.
It is clear that in determining an appropriate alimony award, the trial judge may impute income when a spouse *1237 is voluntarily unemployed, underemployed, or when a spouse's investment decisions cause an asset to generate less income than might be earned via an alternative investment. In Miller, supra, the Court considered "whether income should be imputed from a supporting spouse's investments for the purpose of determining his ... ability to pay alimony...." 160 N.J. at 413, 734 A.2d 752. The Court concluded that the husband "could invest his substantial capital assets to yield more than the ... interest he [wa]s currently earning...." Id. at 423, 734 A.2d 752. "Given that both income earned through employment and investment income may be considered in a court's calculation of an alimony award, it follows that there is no functional difference between imputing income to the supporting spouse earned from employment versus that earned from investment." Ibid.; see also Donnelly v. Donnelly, 405 N.J.Super. 117, 130, 963 A.2d 855 (App.Div.2009) ("The trial court must consider ... what is equitable and fair in all the circumstances. This requires not only an examination of the parties' earnings but also how they have expended their income and utilized their assets.") (citation omitted); Stiffler v. Stiffler, 304 N.J.Super. 96, 102, 698 A.2d 549 (Ch.Div.1997) (noting that the supporting spouse could not "insulate his inheritance from the alimony calculus by transforming it into a non-income producing asset"); Arribi v. Arribi, 186 N.J.Super. 116, 118, 451 A.2d 969 (Ch.Div.1982) ("[O]ne cannot find himself in, and choose to remain in, a position where he has diminished or no earning capacity and expect to be relieved of or to be able to ignore the obligations of support to one's family.").
The trial judge seemingly construed this precedent to impose a "fiduciary duty" upon divorcing spouses, but it is clear that he erred in this regard. We have recognized in other contexts that valid public policy concerns require divorcing spouses to deal fairly with each other. Kay v. Kay, 405 N.J.Super. 278, 285, 964 A.2d 324 (App.Div.2009), aff'd 200 N.J. 551, 985 A.2d 1223 (2010); see also Moore v. Moore, 376 N.J.Super. 246, 251, 870 A.2d 303 (App.Div.) (recognizing a "pre-existing duty which runs between spouses who have been in a marriage which has failed") (quotation omitted), certif. denied, 185 N.J. 37, 878 A.2d 854 (2005). However, the obligation to deal fairly with each other and not dissipate assets, as was claimed in Kay, or unilaterally reduce one's income by refusing to retire, as in Moore, is not the equivalent of imposing a fiduciary duty upon a party. Certainly no reported decision in this State has ever characterized each party's obligation to the other in a divorce proceeding as a "fiduciary duty," the essence of which is "to act primarily for another's benefit." Black's Law Dictionary, 563 (5th ed. 1979).
Any further discussion of the point, however, is not essential to our resolution of the critical issue, i.e., whether defendant's beneficial interest in the WTT was properly considered in the alimony calculus.

(D)
Plaintiff analogizes defendant's beneficial interest in the WTT to that of a spouse who has access to an asset and fails to properly utilize it to support him or herself. Defendant and the Trusts contend that the WTT, because it conferred absolute discretion upon the trustees to make distributions, and denied defendant the ability to compel any distribution, was not an asset that could be considered. The parties concede that the issue has never been the subject of a reported decision in this State.
As already noted, N.J.S.A. 2A:34-23(b)(11) provides that in setting an alimony award, the judge must consider "[t]he *1238 income available to either party through investment of any assets held by that party." Some New Jersey cases have recognized in other contexts that an asset is properly considered to be on the economic ledger sheet of one divorcing party if that party controls the asset. In Aronson, supra, for example, we considered whether income generated from plaintiff's inheritance was to be considered for alimony purposes. Judge, now Justice, Long wrote:
To the extent that income is generated by a dependent spouse's inheritance or by any other asset, that income is crucial to the issue of that spouse's ability to contribute. This is true whether the spouse chooses to actually receive the income or whether, at his or her option, it is plowed back into the inheritance. The issue is not actual receipt of funds but access to them. So long as the spouse has the ability to tap the income source ... whether he or she actually obtains the cash in hand is inconsequential.

[245 N.J.Super. at 364-65, 585 A.2d 956 (emphasis added).]
See also Mey v. Mey, 79 N.J. 121, 125, 398 A.2d 88 (1979) (holding that husband's interest in trust principal was "`legally and beneficially acquired[,]'" for equitable distribution purposes only when "he acquired unimpaired control and totally free use and enjoyment").[5]
Whether defendant's beneficial interest in the WTT was an "asset[ ] held by" her, or whether she had "control" of the income generated by the WTT or "the ability to tap the income source" it represented, requires our review of the specific language of this trust and some basic principles regarding the nature of a discretionary trust for support.
We have noted that in our "search ... for the probable intention of the ... settlor[,]..., [w]e confine [our] inquiry to the four corners of the document and the language therein, and then consider the circumstances surrounding its execution and other extrinsic evidence of intention." In re Trust Under Agreement of Vander Poel, 396 N.J.Super. 218, 226, 933 A.2d 628 (App.Div.2007) (citations omitted), certif. denied, 193 N.J. 587, 940 A.2d 1219 (2008). "The extent of the interest of the beneficiary of a trust depends upon the manifestation of intention of the settlor...." Restatement (Second) Trusts § 128 (1959); accord Restatement (Third) of Trusts, supra, § 49 ("Except as limited by law or public policy ..., the extent of the interest of a trust beneficiary depends upon the intention manifested by the settlor.").
Paragraph 3(A) of the WTT gives the trustees the "sole discretion," to pay out principal and income "for the benefit of [defendant]'s health, support, maintenance, education and general welfare, ... after taking into account the other financial resources available to [defendant]...." Paragraph 3(C) provides that "it [w]as the express intention of the Grantors ... that [defendant] shall not be permitted, under any circumstances, to compel distributions of income and/or principal prior to the time of final distribution." Lastly, paragraph 14, provides that defendant had no ability "to alienate, anticipate, pledge, assign, sell, transfer or encumber" distributions from the trust. Defendant's father testified that his intention in settling the WTT was that defendant would not be able to compel distributions. He also testified that it was not his intent in settling any of the Trusts that plaintiff be relieved of his obligations to support defendant or the *1239 children. Plaintiff concedes that under the terms of the WTT, "[t]he trustees have total discretion, and the Trust contains the broadest of standards.... [D]efendant cannot compel the trustees to make distributions to her...."
Nevertheless, plaintiff argues that the language of the trust must be interpreted consistently with evolving standards and with the well-defined fiduciary obligations of a trustee. See, e.g., Commercial Trust Co. v. Barnard, 27 N.J. 332, 341, 142 A.2d 865 (1958) ("It is the duty of a trustee, imbued by the settlor with discretionary powers, to exercise active judgment and not to remain inert."). Plaintiff contends that defendant's beneficial interest in the WTT is an asset to which income was properly imputed. We disagree.
Pursuant to the Restatement (Second) of Trusts, supra, a discretionary trust exists "if by the terms of [the] trust ... the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as the trustee in his uncontrolled discretion shall see fit to pay or apply ...." § 155(1); see also § 155(1) comment b. "[T]he beneficiary [of a discretionary trust] c[an] not compel payment to himself or application for his own benefit." Id. at § 155(1) comment b; see id. at § 128 comment d ("If the settlor manifests an intention that the discretion of the trustee shall be uncontrolled, the beneficiary cannot compel the trustee to make any payment to him or application for his benefit, if the trustee does not act dishonestly or arbitrarily or from an improper motive."). As a result, "[i]n a discretionary trust it is the nature of the beneficiary's interest ... which prevents the transfer of the beneficiary's interest." Id. at § 155(1) comment b. The limited nature of the beneficiary's rights serves to limit the rights of any "transferee or creditor" of the beneficiary who similarly "[could] not compel the trustee to pay anything to him...." Ibid; see also George Gleason Bogert et al., Trusts & Trustees, § 228 at 569 (3d ed. 2007) ("The beneficiary's interest in the trust is subject to the trustee's discretion; the beneficiary has no `right' to payments of trust property....").
Under the Restatement (Second) of Trusts, supra, the same limits apply to so-called "support trusts." See § 128 comment e ("By the terms of the trust it may be provided that the trustee shall pay or apply only so much of the income ... as is necessary for the education or support of a beneficiary."). In a support trust, "the beneficiary cannot compel the trustee to pay to him or to apply for his benefit more than the trustee in the exercise of a sound discretion deems necessary for his education or support." Ibid.
The parties have not brought to our attention, and our independent research has not disclosed, any published opinion in which our courts have specifically adopted §§ 128 or 155 of the Restatement (Second) of Trusts. However, our courts have repeatedly adopted other portions of the Restatement (Second) of Trusts. See, e.g., McKelvey v. Pierce, 173 N.J. 26, 57, 800 A.2d 840 (2002) (utilizing Restatement (Second) of Trusts §§ 170, 174 to define fiduciary obligations); F.G. v. MacDonell, 150 N.J. 550, 564, 696 A.2d 697 (1997) (same); In re Estate of Munger, 63 N.J. 514, 522, 309 A.2d 205 (1973) (citing Restatement (Second) of Trusts § 227 and comments thereto regarding limitation upon a trustee's investment options); In re Estate of Bonardi, 376 N.J.Super. 508, 515, 871 A.2d 103 (App.Div.2005) (citing Restatement (Second) of Trusts § 337 regarding termination of a testamentary trust); Merrill Lynch Pierce Fenner & Smith, Inc. v. Nora-Johnson, 351 N.J.Super. 177, 181-82, 797 A.2d 226 (App.Div. 2002) (citing Restatement (Second) of Trusts supra, § 194 comment a and § 200 *1240 comment e regarding the ability of one co-trustee to compel action by the trust).
Our courts have also repeatedly recognized the broad discretion accorded trustees of a discretionary trust, and thereby, implicitly the limits upon a beneficiary's ability to compel a specific exercise of the trustee's discretion. See, e.g., Wiedenmayer v. Johnson, 106 N.J.Super. 161, 165, 254 A.2d 534 (App.Div.) (denying inter vivos trust beneficiaries' challenge to trustee's decision and holding that "[c]ourts may not substitute their opinions as to the... `best interests,' as opposed to the opinion of the trustees vested by the creator of the trust with the `absolute and uncontrolled discretion' to make that determination"), aff'd 55 N.J. 81, 259 A.2d 465 (1969); Roberts v. Roberts, 388 N.J.Super. 442, 451-52, 908 A.2d 1273 (Ch.Div.2006) (citing Restatement (Second) of Trusts, supra, § 187, and refusing to compel father/trustee to disburse funds for child's private schooling absent an abuse of discretion); McFerran v. Paterson Nat'l Bank, 125 N.J.Eq. 456, 457, 6 A.2d 403 (Ch.1939) (denying beneficiary's challenge to distribution from corpus of trust based upon claimed inadequacy, holding that "the court will not substitute its judgment for that of a trustee where a discretion is given the trustee, except upon proof that the exercise of the discretion has been in bad faith") (citations omitted).
Additionally, we have examined case law from our sister states in search of guidance. Several jurisdictions have concluded that it is not appropriate to consider a party's beneficial interest in a discretionary trust as an asset for purposes of alimony or child support because the spouse has no current right to the fund. See, e.g., In re Marriage of Jones, 812 P.2d 1152, 1156-57 (Colo.1991) (holding that wife, beneficiary of a discretionary support trust, had no current "enforceable right" to compel distribution and therefore it was error to include the trust as an asset for equitable distribution purposes); In re Marriage of Rhinehart, 704 N.W.2d 677, 681 (Iowa 2005) (holding that where beneficiary has no current right to distribution from trust, "it would not be appropriate to treat the undistributed income from the trust as a current source of financial support that would alleviate [the wife]'s need for alimony"); but compare In re Barkema Trust, 690 N.W.2d 50, 54 (Iowa 2004) (noting in a "discretionary support trust, the beneficiary has a right that the trustee pay him the amount which in the exercise of reasonable discretion is needed for his support") (quotation omitted); Ridgell v. Ridgell, 960 S.W.2d 144, 147-48 (Tex.App.1997) (noting, in the context of equitable distribution, that "[u]nder a discretionary trust ... the beneficiary is entitled only to the income or principal that the trustee, in its discretion, shall distribute to him ... [and] cannot compel the trustee to pay him or apply for his use any part of the trust property") (citations omitted). We acknowledge, however, that the decisions from our sister jurisdictions do not reflect unanimity, frequently rely upon local statutes, and make distinctions between whether the beneficial interest in the trust is an asset, or whether it is reachable by a spouse seeking the payment of child support or alimony already awarded. See M.L. Cross, Annotation, Trust Income or Assets as Subject to Claim against Beneficiary for Alimony, Maintenance, or Child Support, 91 A.L.R.2d 262 (2008) (collecting cases).
The judge below relied upon various sections of the Restatement (Third) of Trusts in concluding that income from the WTT should be imputed to defendant. We acknowledge that the Restatement (Third) of Trusts has adopted significant changes regarding the rights of a beneficiary of a discretionary or support trust.
*1241 Section 50, comment a of the Restatement (Third) of Trusts, supra, "deals with situations in which trustees are granted discretion with respect to beneficiaries' rights to trust benefits. For these situations, the terminology `discretionary trust' or `discretionary interest' is used ... whether or not the terms of the trust provide standards ... to limit or guide the trustee's exercise of the discretionary power." The commentators have noted, for example, that the current Restatement "does not attempt to draw a bright line between `discretionary' interests ... and `support' interests.... The so-called `support trust[ ]' ... is viewed ... as a discretionary trust with a support standard." Restatement (Third) of Trusts, supra, § 60 comment a; see also Bogert et al., supra, § 228 at 567 (recognizing that the Restatement (Third) of Trusts and Uniform Trust Code have "eliminate[d] the distinction between discretionary and support trust, treating the latter as a discretionary trust with a standard"). These changes reflect recognition that a beneficiary of a discretionary trust has an enforceable interest in the benefits of the trust, even if the trustees are accorded the broadest discretion.
For example, § 50 of the Restatement (Third) of Trusts, supra, now provides:
Enforcement and Construction of Discretionary Interests
(1) A discretionary power conferred upon the trustee to determine the benefits of a trust beneficiary is subject to judicial control only to prevent misinterpretation or abuse of the discretion by the trustee.
(2) The benefits to which a beneficiary of a discretionary interest is entitled, and what may constitute an abuse of discretion by the trustee, depend on the terms of the discretion, including the proper construction of any accompanying standards, and on the settlor's purposes in granting the discretionary power and in creating the trust.
[Emphasis added.]
See id. at comment a ("The commentary that follows is concerned not only with the trustee's duties but also with the ability of beneficiaries of these discretionary interests to enforce their rights, and thus with the extent of the beneficiaries' interests.") (emphasis added); see also In re Barkema Trust, supra, 690 N.W.2d at 54 (not citing to the Restatement (Third) of Trusts, but holding that "the beneficiary has a right that the trustee pay him the amount which in the exercise of reasonable discretion is needed for his support") (quotations omitted).
Under the Restatement (Third) of Trusts, supra, "[t]he terms of trusts usually provide some standards or guidelines concerning the purposes the settlor ha[d] in mind in creating a discretionary interest." § 50 comment d. With regard to two terms specifically contained in the WTT's stated purposesthe "support" and "maintenance" of defendantthe commentators have noted
Probably the most common guides used in grants of discretion, these terms are sometimes accompanied by a reference to the beneficiary's accustomed standard of living or station in life. That level of intended support is normally implied from "support" or "maintenance" even without an express reference to the beneficiary's customary lifestyle....
. . . .
The accustomed manner of living for these purposes is ordinarily that enjoyed by the beneficiary at the time of the settlor's death or at the time an irrevocable trust is created. The distributions appropriate to that lifestyle not only increase to compensate for inflation but also may increase to meet subsequent increases in the beneficiary's needs resulting, *1242 for example, from deteriorating health or from added burdens appropriately assumed for the needs of another....
. . . .
Under the usual construction of a support standard ... it would not be reasonable... or even a result contemplated by the settlor ... for the trustee to provide only bare essentials for a beneficiary who had enjoyed a relatively comfortable lifestyle.... The standard ordinarily entitles a beneficiary to distributions sufficient for accustomed living expenses, extending to such items as regular mortgage payments, property taxes, suitable health insurance or care, existing programs of life and property insurance, and continuation of accustomed patterns of vacation and of charitable and family giving.

[Id. at comment d(2) (emphasis added).]
Furthermore, while "the presumption is that the trustee is to take the beneficiary's other resources into account in determining whether and in what amounts distributions are to be made," Restatement (Third) of Trusts, supra, § 50 comment e, the presumption "does not apply when the settlor expresses a different intent.... Thus, the settlor may manifest an intention that other resources are not to be taken into account ... or that they must be ... with the trustee to have no discretion in the matter." Ibid. Comment e(3) provides further guidance on the issue:
The question may arise with regard to the normally mutual support obligations between married individuals, one of whom is the designated beneficiary of a discretionary interest and the other of whom has resources from which to provide their support. Whatever duty or discretion the trustee has generally in the matter of other resources presumptively extends also to the right of spousal support.
[Restatement (Third) of Trusts, supra, § 50 comment e(3).]
The terms of the WTT requires its trustees to exercise their discretion only "after taking into account the other financial resources available" to defendant, though, at the same time, it requires them to exercise their discretion "without regard to the duty of any person to support [defendant]."
Application of the above-cited provisions and commentaries of the Restatement (Third) of Trusts to the WTT leads to some inescapable conclusions. While the trustees of the WTT were granted the express power to distribute any income in their sole discretion, and while defendant cannot compel a distribution, the trustees, including defendant herself, must exercise their discretion reasonably and with due consideration of the terms of the trust. See Restatement (Third) of Trusts, supra, § 50(1). Unlike the limited rights of a discretionary beneficiary recognized by the prior Restatement, under the Restatement (Third) of Trusts, supra, "the benefits to which [defendant] is entitled, and what may constitute an abuse of discretion by the trustee[s], depend on the terms of the discretion, including the proper construction of any accompanying standards, and on the settlor's purposes in granting the discretionary power and in creating the trust." Id. at § 50(2) (emphasis added). Defendant has the ability to "enforce [her] rights" to these benefits, which, in turn, defines "the extent of [her] interests." Id. at § 500 comment a.
The trustees of the WTT must exercise their discretion for the "benefit of [defendant]'s health, support, maintenance, education and general welfare[,]" and are obligated to comply with the terms of the trust, meaning their discretion must be exercised to provide for distributions that keep defendant in her "accustomed standard *1243 of living or station in life." Id. at comment d(2). Such a "standard ordinarily entitles [defendant] to distributions sufficient for accustomed living expenses, extending to such items as regular mortgage payments, property taxes, suitable health insurance or care, [and] existing programs of life and property insurance...." Ibid. (emphasis added). The express terms of the WTT requires the trustees to make discretionary distributions "after taking into account the other financial resources available to the beneficiary." This limit upon the trustees' discretionary authority "presumptively extends also to [defendant's] right of spousal support." Id. at comment e(3).
In New Jersey, only the Tax Court has specifically acknowledged any provision of the Restatement (Third) of Trusts. In Estate of Franko v. Director, Division of Taxation, 23 N.J.Tax 1, 6-7 (Tax 2006), the court concluded that the interest of the beneficiary of a discretionary trust created by will "was subject to `an uncertain future event,' that is, whether the trustees would exercise their discretion to distribute trust income or principal to him." (citing Restatement (Third) of Trusts, supra, § 50 for the proposition that "`[a] discretionary power conferred upon the trustee to determine the benefits of a trust beneficiary is subject to judicial control only to prevent misinterpretation or abuse of the discretion by the trustee.'") (alteration in original).
Additionally, very little authority from our sister states cites to the Restatement (Third) of Trusts, supra, § 50. See, e.g., In re Trust Created by Hansen, 274 Neb. 199, 739 N.W.2d 170, 181 (2007) (adopting § 50 and concluding that the estate of decedent/trust beneficiary possessed an enforceable right against the trustees to pay for funeral expenses and remanding for an evidential hearing); Carmody v. Betts, 104 Ark.App. 84, 289 S.W.3d 174, 178-79 (2008) (declining to adopt § 50 regarding presumption that absent stated intent, in exercising discretion the trustee must consider other financial resources of beneficiary); Laubner v. JP Morgan Chase Bank, N.A., 386 Ill.App.3d 457, 325 Ill.Dec. 697, 898 N.E.2d 744, 752 (2008) (citing § 50 and rejecting beneficiaries' claims that support was inadequate to maintain their lifestyle). We have come across no reported case that considered § 50 of the Restatement (Third) of Trusts in the context of recognizing a beneficiary's enforceable interest to trust income or corpus for purposes of alimony, child support, or equitable distribution.
As a court of intermediate appellate jurisdiction, we do not presume to adopt the Restatement (Third) of Trusts as the law of this state and apply its provisions to the facts of this case. Given the significance of its principles in the context of N.J.S.A. 2A:34-23(b)(11), such determination would be more appropriately made by our Supreme Court. See Proske v. St. Barnabas Med. Ctr., 313 N.J.Super. 311, 316, 712 A.2d 1207 (App.Div.1998) (declining to find damages for personal injuries based on a failure to perform a contractual term "`in the absence of [any] precedent, or ... clear direction by dictum from our Supreme Court'" authorizing such action) (quoting Coyle v. Englander's, 199 N.J.Super. 212, 226, 488 A.2d 1083 (App.Div. 1985)), certif. denied, 158 N.J. 685, 731 A.2d 45 (1999); see also Riley v. Keenan, 406 N.J.Super. 281, 297, 967 A.2d 868 (App.Div.) (noting that an appellate court "should normally defer to the Supreme Court ... with respect to the creation of a new cause of action") (citing Tynan v. Curzi, 332 N.J.Super. 267, 277, 753 A.2d 187 (App.Div.2000)), certif. denied, 200 N.J. 207, 976 A.2d 384 (2009).
We conclude that under the existing law of this state, defendant's beneficial interest *1244 in the WTT was not an "asset[ ] held by" her. It was, therefore, improper to impute income from the WTT to defendant in determining plaintiff's alimony obligation.

(E)
We also conclude the judge erred in ordering the trust to disburse monies to defendant or to continue to pay for taxes and expenses on the Saddle River home and one-half of the housekeeper's salary. We agree with the Trusts, and indeed plaintiff concedes, that the judge lacked any power to do so.
Since the judge could not compel the Trusts to make disbursements to defendant, there was no need for them to be parties to the litigation. The judge erred in ordering plaintiff to file an amended complaint naming the Trusts as third-party defendants. As we see it, although whether income from the WTT was imputable to defendant was clearly before the court by way of defendant's motion in limine, any and all information and testimony necessary for a complete adjudication of the issue could have been obtained through the use of subpoenas. No one contends otherwise.
We also agree that the Children's Trusts were improperly added as parties to the litigation. Plaintiff makes no argument in opposition. We therefore reverse the interlocutory order of April 4, 2007 that added the Trusts as parties to the suit.
We reject, however, the Trusts' claim for counsel fees. Having made no claim for fees at the trial level, the request is limited to fees incurred on appeal. Rule 2:11-4 requires that "[a]n application for a fee for legal services rendered on appeal shall be made by motion supported by affidavits as prescribed by R. 4:42-9(b) and (c), which shall be served and filed within 10 days after the determination of the appeal." The request is certainly premature.
The Trusts, however, were only added to this litigation because the trial judge insisted that they be. Plaintiff never sought to involve them as parties and the issue came to the forefront because of defendant's motion in limine. In short, we see no basis for an award of fees in favor of the Trusts as against plaintiff.[6]

II.
In light of our decision, and because the imputation of income from the WTT affected the judge's decision regarding the amount of alimony and child support due from plaintiff, we remand the matter for purposes of fixing an appropriate alimony and child support award as necessary. We address a number of concerns raised by the parties in order to provide guidance on remand.

(A)
Defendant argues that the judge erred in his mathematical calculations and by accepting Hoberman's opinions. Plaintiff, in his cross-appeal, argues that while the judge's conclusion regarding lifestyle expenses was correct, he erred in determining defendant's needs because he imputed too little income from the WTT. In light of our decision regarding the *1245 WTT, we reject plaintiff's argument, except as hereafter noted.
It suffices to say that
[t]he Court has ... instructed that "the standard of living experienced during the marriage ... serves as the touchstone for the initial alimony award and for adjudicating later motions for modification of the alimony award when changed circumstances are asserted." Crews, supra, 164 N.J. at 16 [751 A.2d 524]. "The standard of living during the marriage is the way the couple actually lived, whether they resorted to borrowing and parental support, or if they limited themselves to their earned income." (Hughes v. Hughes, 311 N.J.Super. 15, 34 [709 A.2d 261] (App.Div.1998)).
[Glass v. Glass, 366 N.J.Super. 357, 370-71, 841 A.2d 451 (App.Div.), certif. denied, 180 N.J. 354, 851 A.2d 648 (2004) (internal quotations omitted).]
"In the determination of the marital standard, the court establishes the amount the parties needed during the marriage to maintain their lifestyle. That is separate from the identification of the source of funds that supported that lifestyle, although that information is of use to a court when making an alimony award...." Weishaus v. Weishaus, 180 N.J. 131, 145, 849 A.2d 171 (2004) (emphasis added). N.J.S.A. 2A:34-23(b)(1) requires the judge to consider "the actual need and ability of the parties to pay[.]" (Emphasis added).
Rauch concluded that the couple's monthly lifestyle expenses were approximately $15,000 per month, not including payments made by the WTT, expenses on the Quogue, New York property retained by plaintiff, and non-recurring costs. Plaintiff's expert, Hoberman, reviewed the parties' lifestyle expenses for a period of four years, and concluded they were spending $10,600 a month.
The judge essentially rejected Rauch's opinions because they were based upon only two years of family expenses. The judge believed this was insufficient pursuant to, as he called it, the "mandate of Weishaus v. Weishaus, 360 N.J.Super. 281, 291 [822 A.2d 656] (App.Div.2003)[,]" aff'd in part, rev'd in part, 180 N.J. 131, 849 A.2d 171 (2004). The judge also found that defendant's testimony as to her actual needs was "not realistically based upon the history of the parties'" stated expenses contained on their Case Information Statements (CIS), and he found plaintiff's testimony to be "more reliable and credible."
While we generally defer to the Family Part judge's fact finding, particularly to the extent it is based upon credibility determinations, Cesare v. Cesare, 154 N.J. 394, 411-13, 713 A.2d 390 (1998), here, the judge's conclusions were based upon a misinterpretation of the applicable law, and thus, are not entitled to our deference. See La Sala v. La Sala, 335 N.J.Super. 1, 6, 760 A.2d 1122 (App.Div.2000) (noting we will generally affirm an award if it "is not distorted by legal or factual mistake"), certif. denied, 167 N.J. 630, 772 A.2d 932 (2001).
Our decision in Weishaus, did not require a litigant to furnish at least three years of financial data, nor did we intend to constrict the trial judge's consideration of the issue in such mechanistic fashion. In discussing lifestyle expenses, we said in a footnote that the period to be considered
will depend upon the circumstances of the marriage. For example, in a long term marriage with a consistent lifestyle, the last three years of cohabitation may be an appropriate period to consider. Where the parties' financial circumstances were inconsistent from year to year, a different period may be appropriate, all in the judge's discretion.

*1246 [Weishaus, supra, 360 N.J.Super. at 291 n. 2, 822 A.2d 656.]
Here, there was a dispute as to why Rauch limited his review to two years, specifically whether more extensive financial materials were withheld or, rather, were never requested. In any event, while the parties disputed what their average lifestyle was, no one alleged that it had significantly changed over the last few years of the marriage. Moreover, the judge accepted Hoberman's report without significant analysis of some internal inconsistencies, for example, the lack of expenses for automobile insurance and camp costs for the children.
There were other problems with the judge's analysis when he sought to apply his conclusion regarding lifestyle expenses to the calculation of "the amount of support required by the dependent spouse to maintain [that lifestyle]." Weishaus, supra, 360 N.J.Super. at 291, 822 A.2d 656. The judge acknowledged that the lifestyle expenses included those incurred by the parties and their children, but failed to give any analysis as to the costs associated solely with defendant's needs. He also failed to consider at all plaintiff's post-divorce needs. Other than generally finding plaintiff's testimony more "realistic," the judge gave no analysis to either party's claimed financial needs as set forth on their respective CIS forms. The judge also noted that although the parties maintained a "savings component to [their] lifestyle," he need not consider that "in view of the income and assets of the [WTT] [which made] it ... unreasonable to include in alimony a savings component." In short, the judge's consideration of the lifestyle testimony was inadequate and likely affected by his mistaken interpretation of our decision in Weishaus.
There is another consideration regarding alimony that needs to be addressed on remand. We held above that the judge improperly imputed income from the WTT to defendant and also improperly ordered distributions of that income by the trust. We hasten to add, however, that in determining what defendant's "actual need" is to maintain her lifestyle post-divorce, N.J.S.A. 2A:34-23(b)(1), the judge must consider the historical record of payments made by the WTT on defendant's behalf.
Here, the record is undisputed that for years prior to the divorce, the WTT permitted plaintiff and defendant to live in the Saddle River home without paying rent, and that the trust owned the property and paid the real estate taxes, made improvements on the property, and paid for one-half of the housekeeper's salary. In deciding the "actual need[s]" of defendant for which she was entitled to support from plaintiff, the judge should not turn a blind eye to this reality. To do so would clearly result in a windfall to defendant and be entirely inequitable to plaintiff.
We leave the conduct of the remand as to any alimony award to the trial judge's sound discretion.

(B)
We are also compelled to remand the matter for the purposes of re-calculating the award of child support. Paragraph 14 of the JOD required plaintiff to pay $273 per week in child support, equally allocated between the two children, and payable on the first and fifteenth day of every month. In addition to claiming the imputation of income from the WTT and resultant alimony award were erroneous, defendant also argues that the judge erred by: 1) reducing the award under the Guidelines based upon defendant's reduced housing costs; and 2) failing to increase child support because the parties' income exceeded the maximum amount under the Guidelines. Plaintiff responds that the *1247 judge acted within his discretion in adjusting the Guidelines to reflect actual spending and in not awarding support over the Guidelines amount.
"The trial court has substantial discretion in making a child support award.... If consistent with the law, such an award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." Foust v. Glaser, 340 N.J.Super. 312, 315, 774 A.2d 581 (App.Div.2001) (citations and quotations omitted).
In his decision, the judge adopted plaintiff's argument that he should deviate from the Child Support Guidelines to reflect the fact that defendant did not pay any mortgage or real estate taxes because the WTT paid these costs. Relying upon data submitted by plaintiff from the Department of Labor, from which he extrapolated the average costs associated with shelter expenses, the judge reduced defendant's "fixed costs" for housing by 58%.
The Child Support Guidelines, contained in Pressler, Current N.J. Court Rules, Appendix IX-A to R. 5:6A at 2383 (2010), provide that they
must be used as a rebuttable presumption to establish and modify all child support orders[ ] [and] ... may be disregarded or a guidelines-based award adjusted if a party shows, and the court finds, that such action is appropriate due to conflict with one of the factors..., or ... that an injustice would result due to the application of the guidelines in a specific case. The determination of whether good cause exists to disregard or adjust a guidelines-based award in a particular case shall be decided by the court.
If the court finds that the guidelines are inappropriate in a specific case, it may either disregard the guidelines or adjust the guidelines-based award to accommodate the needs of the children or the parents' circumstances.
To support his deviation from the Guidelines, the judge quoted paragraph 8 of Appendix IX, which states in part:
To qualify for a deviation based on average costs, a parent must show that the family's marginal spending on children for all items related to a consumption category differs from the average family (e.g., there are no housing costs).
[Id. at 2389.]
When defendant moved for reconsideration, the judge denied the request, finding that the deviation was supported because defendant was "not an average homeowner... having no mortgage or real estate taxes to pay[,]" but he also noted that "defendant d[id] incur some housing costs...."
The judge failed to acknowledge other provisions of paragraph 8, which provide: "Note: The fact that a family does not incur a specific expense in a consumption category is not a basis for a deviation from the child support guidelines." Ibid. Indeed the list of expenses contained in the "housing" category includes a number of items which defendant continued to pay. Thus, deviation from the Guidelines on this ground was not appropriate.[7]
Defendant also contends that because combined family income exceeded $187,200, the judge should have supplemented the child support award as required by paragraph 20(b) of Appendix IX-A, which states that "the court shall apply the guidelines up to $187,200 and *1248 supplement the guidelines-based award with a discretionary amount based on the remaining family income (i.e., income in excess of $187,200), and the factors specified in N.J.S.A. 2A:34-23." Id. at 2403.
The judge refused to supplement the Guidelines, concluding that defendant failed to establish "the so-called supplemental needs of the children in excess of the Guidelines as required by Isaacson v. Isaacson, 348 N.J.Super. 560 [792 A.2d 525] (App.Div.2002), [certif. denied,] 174 N.J. 364 [807 A.2d 195] (2002), and Caplan v. Caplan, 182 N.J. 250 [864 A.2d 1108] (2005)." However, we have said that "the dominant guideline for consideration is the reasonable needs of the children, which must be addressed in the context of the standard of living of the parties." Isaacson, supra, 348 N.J.Super. at 581, 792 A.2d 525. The judge failed to conduct any analysis of the children's needs as required by N.J.S.A. 2A:34-23(a).
Paragraph 14 of the JOD setting plaintiff's child support obligations is reversed. Again, we leave the conduct of the remand proceedings to the sound discretion of the judge.[8]

III.
Defendant contends that the judge erred in determining that $199,853 contained in the Vanguard account was not subject to equitable distribution. Pursuant to N.J.S.A. 2A:34-23(h), a court may equitably distribute property that was legally and beneficially acquired during the marriage, "[h]owever, all such property... acquired ... by way of gift, devise, or intestate succession shall not be subject to equitable distribution, except that interspousal gifts ... shall be subject to equitable distribution." When reviewing the equitable distribution ordered after trial, "[w]e must decide whether the ... court mistakenly exercised its broad authority to divide the parties' property or whether the result reached was bottomed on a misconception of law or findings or fact that are contrary to the evidence." Genovese v. Genovese, 392 N.J.Super. 215, 223, 920 A.2d 660 (App.Div.2007) (citations omitted). The Court explained in Painter v. Painter, 65 N.J. 196, 214, 320 A.2d 484 (1974):
[A]ny property owned by a husband or wife at the time of marriage will remain the separate property of such spouse in the event of divorce and will not qualify as an asset eligible for distribution.... Furthermore the income or other usufruct derived from such property, as well as any asset for which the original property may be exchanged or into which it, or the proceeds of its sale, may be traceable shall similarly be considered the separate property of the particular spouse.
"[T]he burden of establishing immunity from distribution of a particular marital asset or portion of an asset rests upon the spouse who asserts it." Pacifico v. Pacifico, 190 N.J. 258, 269, 920 A.2d 73 (2007) (citing Painter, supra, 65 N.J. at 214, 320 A.2d 484).
Prior to the marriage, plaintiff opened an account with Vanguard titled in his name, and it remained so throughout the marriage. As of the date of the marriage, December 4, 1988, the balance in the account *1249 was $89,051, but the balance subsequently dropped substantially. Plaintiff admitted using the account to pay "99.9 percent of the bills" associated with the parties' marriage. He acknowledged that since 2003, his employment earnings were directly deposited into the account, though he claimed that other funds deposited were exempt from distribution.
Hoberman analyzed the Vanguard fund "for the purpose of determining the portion of the account balance that is considered exempt as of August 31, 2006," nine days after the divorce complaint was filed. Hoberman "relied on [plaintiff's] representations in distinguishing deposits into the account from sources that would be considered exempt," including gifts from plaintiff's mother, money from her estate, and money received from the various trusts in which plaintiff had an interest. However, plaintiff provided no documentation regarding the sources of the funds he claimed were exempt, and both plaintiff and Hoberman admitted that several deposits actually came from non-exempt sources, such as the parties' tax refund and plaintiff's earnings.
It was further acknowledged that plaintiff's inheritance money, $326,105, ran through the Vanguard account and was used to purchase the home in Quogue. The total spent on that home and its furnishings exceeded the inheritance amount. The parties stipulated that the funds used to purchase the Quogue house were exempt and that there was no claim for equitable distribution of that property, but there was no stipulation regarding the excess amount.
Hoberman hypothesized that marital funds were expended first from the Vanguard account and exempt deposits were expended second; however, he acknowledged that $177,096 of so-called exempt deposits were spent on marital expenses.
The judge observed that New Jersey courts have not addressed Hoberman's "first in first out" method of tracing marital and non-marital assets, but noted that other jurisdictions had. He concluded that plaintiff had satisfied his burden of tracing the separate property and that only $601 of the balance in the Vanguard account was subject to equitable distribution. The judge also dismissed the idea that the Vanguard account lost its character as separate property because it was commingled with marital property, concluding that "plaintiff ha[d] offered sufficient proofs, uncontroverted by defendant's expert, that the separate funds in his Vanguard account, in his name alone, did not transmute into marital property...."
Defendant argues that plaintiff did not meet his burden of proving that the Vanguard assets were gifts and thus exempt, and alternatively, that the Vanguard account contained commingled funds and therefore lost its status as exempt property. We agree that plaintiff failed to prove the exempt nature of the funds.
Hoberman admitted that his report was based entirely upon plaintiff's representations about the source of the funds and that he had no independent verification of plaintiff's representations. Plaintiff's answers about specific deposits into the account were unvaryingly equivocal. Plaintiff claimed that a number of deposits, in odd amounts, were gifts from his mother; yet, Hoberman himself acknowledged that the claim was "incredibly strange," since gifts are typically given in round-numbered amounts.
We do not specifically address the issue of "transmutation" through the commingling of exempt and non-exempt funds. However, the activity of the account, and how the funds were used, serve to further impair the credibility of plaintiff's contentions that the account was exempt. Plaintiff *1250 acknowledged that the monies financed the parties' marital lifestyle, that the account regularly received deposits of income and earnings from his employment, and that it also received deposits of other non-exempt monies such as the parties' income tax refund. This, combined with plaintiff's inability to independently corroborate his claims of exemption, convinces us that the judge erred in concluding the Vanguard account balance was not subject to equitable distribution.
We therefore reverse paragraph 8E of the JOD and remand the matter for further proceedings so that the judge may consider the equitable distribution of the monies contained in the Vanguard account, as well as any effect distribution may have upon child support and alimony. See N.J.S.A. 2A:34-23(a)(3) and (b)(10).

IV.
Lastly, we deal with two arguments plaintiff raises in his cross-appeal. He contends that the judge should have "retroactively adjusted" his pendente lite support obligation to the date of the original order that imposed it, i.e., October 19, 2006. Plaintiff also argues that the judge improperly denied him counsel fees "where [The Trusts] were properly joined and defendant unnecessarily protracted the litigation." Defendant contends the judge decided both issues correctly, and the Trusts argue that there was no basis for an award of counsel fees against them.
Instead of fixing a monthly sum for pendente lite support, the judge entered an order that listed all of the expenses that plaintiff was responsible for paying directly on an interim basis, further ordered him to pay defendant $100 per week for support, and further permitted defendant to charge up to $2500 a month on a VISA credit card. The parties subsequently entered into a consent order, the particulars of which are not relevant.
The judge, however, determined the order had become "unworkable, impractical, [and] unfeasible." Upon plaintiff's motion, on September 27, 2007, the judge "converted" the original order to a specific dollar amount, $8550 a month. He made the order effective as of July 1, 2007, the date the motion was apparently filed. The judge entered the order without prejudice to plaintiff's right to seek reduction of the award after testimony on the financial issues was complete.
Plaintiff did so. The judge denied the request in his final written decision that accompanied the JOD, concluding that "retroactive modification would serve no purpose except to create taxable income to [defendant] during 2007." Further, the judge determined "imputation of alimony income ... for 2007 would be unduly burdensome and harsh upon the wife who did not contemplate the payment of taxes under the existing pendente lite arrangement." He denied plaintiff's request.
There is no question that "pendente lite support orders are subject to modification prior to entry of final judgment...." Mallamo v. Mallamo, 280 N.J.Super. 8, 12, 654 A.2d 474 (App.Div. 1995) (emphasis omitted). In light of our remand as to alimony and child support, we specifically permit the judge to reconsider the question of any retroactive modification, and the extent of same, after the other issues are determined.
As to plaintiff's final argument, we find no basis for an award of counsel fees against the Trusts. To the extent that is the thrust of plaintiff's request, we believe it "lacks sufficient merit to warrant [any further] discussion in [this] ... opinion." R. 2:11-3(e)(1)(E). Plaintiff's argument as to defendant is premised upon a finding that she acted in bad faith.
*1251 It is true that counsel fees can be awarded if a party acts in bad faith. Diehl v. Diehl, 389 N.J.Super. 443, 454, 913 A.2d 803 (App.Div.2006); see also R. 5:3-5(c)(3) (listing "reasonableness and good faith of the positions" of the parties as a factor in considering any award of counsel fees in a matrimonial action). However, plaintiff's claim of defendant's bad faith rests upon various interim settlement offers that were made and rejected, and the ultimate provisions of the JOD. The trial judge did not conclude that defendant acted in bad faith.
An award of counsel fees in a matrimonial action is discretionary. Eaton v. Grau, 368 N.J.Super. 215, 225, 845 A.2d 707 (App.Div.2004) (citation omitted). On appeal, a decision regarding counsel fees will not be reversed absent a showing of an abuse of discretion involving a clear error in judgment. Chestone v. Chestone, 322 N.J.Super. 250, 258, 730 A.2d 890 (App. Div.1999) (citation omitted). Here, the trial judge considered the relevant factors contained in Rule 5:3-5(c). We find no basis to disturb his decision.

V.
In conclusion, we reverse paragraphs 8E, 11, 13 and 14 of the JOD. We remand the matter to the trial court for further proceedings consistent with this opinion. Plaintiff's request for retroactive modification of pendente lite support is also remanded and shall abide the result of the hearing on remand.
The interlocutory order adding the Trusts as parties to the litigation is reversed and vacated.
We affirm the denial of counsel fees to plaintiff.
We do not retain jurisdiction.
NOTES
[1] Those four trusts are: the Wendy Tannen TrustWendy G. Tannen, Leonard J. Phillips, and Gloria Phillips, Trustees; the Phillips Family Dynasty TrustWendy G. Tannen and Robert A. Bertha, CPA, Trustees; the Blake Gordon Tannen TrustWendy G. Tannen, Trustee; and the Elizabeth Rose Tannen TrustWendy G. Tannen, Trustee. During trial, the judge dismissed the Phillips Family Dynasty Trust from the litigation. There is no appeal from that order. We shall refer to the remaining trusts collectively as "the Trusts," and, when necessary, differentiate the two trusts in which the children are beneficiaries, the Blake Gordon Tannen Trust and the Elizabeth Rose Tannen Trust, as "the Children's Trusts," and the Wendy Tannen Trust as "the WTT."
[2] Apparently, the only other distribution from the WTT was a payment initially made to defer defendant's legal expenses in this litigation; however, based upon subsequent legal advice, defendant repaid the amount to the trust. Defendant wrote some of the checks drawn on the WTT herself.
[3] The judge's opinion erroneously referenced this as § 60.
[4] Although Miller and Innes involved applications for modification of previously-awarded alimony, the Court has instructed that "[t]he standard that governs an application for modification... is the same standard that applies at the time of the original judgment of divorce." Miller, supra, 160 N.J. at 420, 734 A.2d 752.
[5] The Legislature subsequently amended N.J.S.A. 2A:34-23 "to exempt property acquired by gift, devise, or intestate succession from equitable distribution...." See Carr v. Carr, 120 N.J. 336, 353, 576 A.2d 872 (1990).
[6] As to the other two claims specifically advanced by the Trusts on appeal, we reject the argument that plaintiff's complaint should be dismissed because of his "unclean hands and dishonesty during the trial." It is "without sufficient merit to warrant [extensive] discussion in ... [this] opinion." R. 2:11-3(e)(1)(E). As to the contention that the trial judge failed to impute the proper amount of income to plaintiff in determining the alimony award, in light of our ruling, we fail to see how the Trusts have any standing to assert such an argument.
[7] Plaintiff contends that the child support award can be affirmed based upon income imputed to defendant from the WTT. We reject the argument based upon our earlier discussion.
[8] In a footnote, defendant contends that because the children were both over twelve years of age when the initial child support award was entered, the judge should have increased the Guidelines amount by 14.6% as required by paragraph 17 of Appendix IX-A, Pressler, supra, at 2400-01. It is improper to raise a point of error in a footnote. Universal-Rundle Corp. v. Commercial Union Ins. Co., 319 N.J.Super. 223, 246 n. 8, 725 A.2d 76 (App.Div.), certif. denied, 161 N.J. 149, 739 A.2d 574 (1999). Nevertheless, defendant is correct regarding the provisions of paragraph 17, and she may raise the issue on remand.