760 A.2d 1122 (2000)
335 N.J. Super. 1
Karleen LA SALA, Plaintiff-Respondent,
v.
Alfred LA SALA, Defendant, and
Police and Firemen's Retirement System, Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 2000.
Decided November 3, 2000.
*1124 Susanne Culliton, Deputy Attorney General, argued the cause for appellant; John J. Farmer, Jr., Attorney General, attorney; Nancy C. Kaplan, Assistant Attorney General, of counsel; Ms. Culliton, on the brief.
Richard Seltzer, Hoboken, argued the cause for respondent.
Before Judges WEFING, CUFF and LEFELT.
*1123 The opinion of the court was delivered by LEFELT, J.A.D.
Plaintiff Karleen LaSala and defendant Alfred LaSala were in the midst of a divorce proceeding when plaintiff requested equitable distribution of defendant's Police and Firemen's pension before defendant retired. The trial court divorced the parties on April 19, 1999 and directed the Board of Trustees of the Police and Firemen's Retirement System ("PFRS") to commence immediate monthly payments to plaintiff and to continue these payments for the remainder of her life or until one-half the value of defendant's pension has been paid, whichever comes first. The trial court's written decision explaining the pension distribution was published at LaSalla v. LaSalla[1], 324 N.J.Super. 264, 285, 735 A.2d 52 (Ch. Div.1999). PFRS now appeals, and we reverse.
Plaintiff and defendant were married on May 18, 1968. After twenty-eight years of marriage, plaintiff filed for divorce on February 14, 1996. The parties had three children, all of whom are emancipated. Defendant is fifty-three years old and is Deputy Chief of the Jersey City Fire Department. Because defendant has thirty-years of service, he is fully vested in his pension, but defendant has no present plans to retire.
Plaintiff re-entered the work force in 1984 when the parties' youngest child began attending school. Plaintiff's full time employment continued until 1994 when she lost her job due to downsizing by her employer. Since that time her employment has been sporadic and at modest compensation. Plaintiff is a high school graduate with limited job skills.
During their marriage, the parties acquired only two assets of any significance, the marital home and defendant's PFRS pension. Excluding defendant's pension, the parties' net worth is just slightly in excess of $12,000. The trial judge established $669,000 as the value of defendant's pension, as of February 14, 1996, the date plaintiff filed her divorce complaint. The value was derived from calculations used by the Division of Pensions to estimate the amount of funds that must be transferred to the retirement account when a member retires.
Because plaintiff sought, before defendant's retirement, either a lump sum or other equitable distribution of her interest in defendant's pension, the judge, upon plaintiff's motion, joined PFRS as a party to the litigation. After conducting a plenary hearing on the distribution of defendant's pension, the trial court ordered PFRS to commence monthly payments to plaintiff for the remainder of her life or until she received the maximum benefit of $334,500, one-half the value of defendant's pension. The trial court stayed its judgment, and only PFRS appealed. No party has challenged the value established for defendant's pension, though PFRS does take the position that neither defendant nor plaintiff is entitled to the present value of defendant's retirement allowance. The issue presented by this appeal, thus, is whether the trial court erred by ordering PFRS to distribute plaintiff's share of defendant's pension before defendant's retirement.
The trial court has discretion in allocating marital assets to the parties in equitable distribution. Borodinsky v. Borodinsky, *1125 162 N.J.Super. 437, 443-44, 393 A.2d 583 (App.Div.1978). We review distributions to determine whether the court has abused its discretion. Ibid. Thus, we will affirm an equitable distribution as long as the trial court could reasonably have reached its result from the evidence presented, and the award is not distorted by legal or factual mistake. Perkins v. Perkins, 159 N.J.Super. 243, 247-48, 387 A.2d 1211 (App.Div.1978). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty v. Township Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995).
The trial court, in this case, was concerned that plaintiff would become destitute unless it directed the immediate distribution of plaintiff's share of defendant's pension. LaSalla, supra, 324 N.J.Super. at 285, 735 A.2d 52. The judge, in effect, made plaintiff "a limited member of PFRS." Id. at 284, 735 A.2d 52. According to the trial court, plaintiff was not entitled to a lump sum payment by PFRS, but she was entitled to make two choices: (1) "withdraw her share of the contributions[,]... waive the pension, ... [and] receive only her proportionate share of the contributions made during coverture"; or (2) "receive the pension ... payable in monthly installments [from PFRS], capped by her distributive share, $334,500." Ibid. Our problem with this result is that the trial court has granted plaintiff rights in defendant's pension that no member of PFRS enjoys.
PFRS is a pooled annuity defined benefit fund. Only a member's contributions are attributable to the member. All of the remaining assets are "pooled" for the entire system. Under the current statute, therefore, only when defendant retires will he be entitled to his pension. Until he retires, he has no present right to a retirement benefit.
Defendant's pension, until he retires, is also contingent upon separation from service and withdrawal from the retirement system. N.J.S.A. 43:16A-11 to 11.1. His pension may also be completely or partially forfeited "for misconduct occurring during the member's public service." N.J.S.A. 43:1-3b. The only immediate right defendant enjoys is the right to borrow up to one-half of his accumulated contributions to the retirement system. N.J.S.A. 43:16A-16.1. Should defendant die, there is no statutory provision to continue his benefits to his spouse. The remaining funds allocated to defendant's pension would upon his death be returned to the fund.
In 1967 the PFRS statute was significantly amended by L. 1967, c. 250, § 31, repealing N.J.S.A. 43:16A-12, which permitted PFRS members to elect a form of retirement that would provide a survivor annuity to a designated beneficiary. Under this form of retirement, the member received a reduced benefit in exchange for the survivor annuity.
Instead, after the 1967 amendment, PFRS provides a separate "widow's pension," which supplies a life annuity to the member's surviving spouse without additional contributions by the member or reduction in the member's retirement benefits. N.J.S.A. 43:16A-12.1. The "widow's pension" constitutes a fixed percentage of the member's "average final compensation." Ibid. According to the statute, however, a widow is a "woman to whom a member or retirant was married at least one year before the date of his death and to whom he continued to be married until the date of his death and who has not remarried." N.J.S.A. 43:16A-1(24). A recent amendment to this provision now requires that the woman be married to the member "on the date of his death." L. 1999, c. 428, § 1, effective January 18, 2000. Thus, to be entitled to a widow's pension, the widow must have been married to the member on the day he died and not remarried. No provision is included for divorced spouses, and as a result of the *1126 divorce, plaintiff is no longer eligible for the "widow's pension."
PFRS, does, however, allow for any named beneficiary to receive a life insurance benefit under N.J.S.A. 43:16A-12.3, and in the case of death during service, a return of pension contributions upon the member's death. N.J.S.A. 43:16A-9(1). Thus, under the existing PFRS statute, should defendant die before retiring, any beneficiary will be entitled to a return of pension contributions and the life insurance benefit.
Upon retirement, defendant would receive monthly payments of the retirement allowance. N.J.S.A. 43:16A-12.2. A PFRS member who has accrued twenty-five years of service may retire regardless of age at sixty-five-percent of final salary. N.J.S.A. 43:16A-11.1. At thirty years of service, the member may retire at seventy-percent of final salary. Ibid. Further, these monthly pension benefits cease upon the retiree's death, and the only benefits that are available, upon the member's death, are the "widow's pension" and life insurance benefit.
No one questions plaintiff's right to equitable distribution, under N.J.S.A. 2A:34-23, of defendant's pension. Kruger v. Kruger, 73 N.J. 464, 375 A.2d 659 (1977). It is well recognized in this state that a spouse's pension, acquired during the marriage, is subject to equitable distribution upon divorce. Moore v. Moore, 114 N.J. 147, 155, 553 A.2d 20 (1989). Because employee pensions often are accrued by the parties' joint efforts during the marriage, pension benefits paid after divorce can be equitably distributed. Ibid. The distribution normally requires the spouse's share, as determined under Painter v. Painter, 65 N.J. 196, 320 A.2d 484 (1974), to be multiplied by a coverture fraction. Whitfield v. Whitfield, 222 N.J.Super. 36, 48, 535 A.2d 986 (App.Div. 1987).
It is the judge's function to develop an appropriate equitable distribution method. Over the years, three methods have generally been utilized to distribute pensions: (1) "deferred distribution," where payment occurs after the retiring spouse begins receiving benefits; (2) "immediate offset or payment," which utilizes existing assets to either offset or pay the benefit; and (3) "partial deferred distribution," which entails a "current valuation award of the appropriate share of the non-contingent portion of the pension and a deferred distribution of the share of the contingent benefits if and when they are paid to the employee spouse." Moore v. Moore, supra, 114 N.J. at 161, 553 A.2d 20.
The problem confronting the trial judge was obviously the parties' lack of assets. If the parties had enough assets to affect an offset of plaintiff's claim against defendant's pension, then such a distribution would be possible. Moore, supra, 114 N.J. at 160, 553 A.2d 20. If defendant were retired, then plaintiff could receive her equitable share on a monthly basis, like defendant, directly from PFRS. See Cleveland v. Board of Trustees, Police and Firemen's Retirement System, 229 N.J.Super. 156, 550 A.2d 1287 (App.Div. 1988).
Here, however, the trial court basically established an immediate payout by PFRS of a portion of defendant's pension. Because defendant himself has no present right to the pension benefits, plaintiff also has no present right, and the trial court's distribution was unauthorized. Should defendant die before he retires, his beneficiary would be entitled only to defendant's contributions and the life insurance benefit. Moreover, any loans by the member from his contributions would be deducted from any money due upon defendant's retirement or death. While defendant is entitled to a monthly benefit upon retirement, once he dies, there is no requirement to continue payment of the benefit.
The trial judge believed that because the legislature created the "widow's pension," *1127 the Legislature clearly and unmistakenly demonstrated an intent to provide for the future financial security of a dependent spouse surviving a PFRS member. Further, since the additional benefits were provided without an adjustment to the funding mechanism, it is clear that the Legislature intended to subordinate actuarial soundness to the accomplishment of this specific, significant public purpose.
[LaSalla, supra, 324 N.J.Super. at 273, 735 A.2d 52]
We disagree with the breadth of this statement and the application of this rationale to a divorced spouse. The legislative language is clear and does not include a divorced spouse within the definition of "widow." We have previously determined that "a court cannot balance [the] equities by taking a portion of a widow's statutory entitlement and giving it to a former spouse." Seavey v. Long, 303 N.J.Super. 153, 160, 696 A.2d 102 (App.Div.1997). The legislature created the widow's benefit in such a way that the member cannot control the designation of benefits upon his or her death. Defendant cannot designate a beneficiary to receive the "widow's benefit." Id. at 158, 696 A.2d 102. The benefit is controlled by statute, and once plaintiff and defendant divorced, plaintiff ceased to be a surviving spouse under N.J.S.A. 43:16A-12.1.
We cannot ascribe to the Legislature by its enactment of the "widow's pension" an intention to provide for the future financial security of a surviving divorced spouse. We are required to enforce the legislative intent as written, "and not according to some supposed unexpressed intention." Lehmann v. Kanane, 88 N.J.Super. 262, 265, 212 A.2d 35 (App. Div.), certif. denied, 45 N.J. 591, 214 A.2d 29 (1965).
Moreover, pension benefits for police and fire fighters will be jeopardized in the future if the fund is not "`maintained upon a sound actuarial basis.'" 8Brown v. Township of Old Bridge, 319 N.J.Super. 476, 498, 725 A.2d 1154 (App.Div.), certif. denied, 162 N.J. 131, 741 A.2d 99 (1999) (quoting Seire v. Police and Fire Pension Comm'n of Orange, 6 N.J. 586, 591, 80 A.2d 97 (1951)). The fund must be administered "in accordance with sound actuarial principles and experience." Consolidated Police & Firemen's Pension Fund Comm'n v. City of Passaic, 23 N.J. 645, 655, 130 A.2d 377 (1957). We cannot agree that by adopting the "widow's pension," the legislature intended to overlook actuarial soundness to provide a benefit for divorced spouses.
The trial court recognized that no precedent supported plaintiff's request for immediate payout of defendant's PFRS pension. He did note that "several of our sister states have adopted a variant form of immediate payout." LaSalla, supra, 324 N.J.Super. at 278, 735 A.2d 52. The judge cited Furia v. Furia (Furia I), 638 A.2d 548 (R.I.1994); Furia v. Furia (Furia II), 692 A.2d 327 (R.I.1997); Rowe v. Rowe, 24 Va.App. 123, 480 S.E.2d 760 (1997); and Gillmore v. Gillmore, 29 Cal.3d 418, 174 Cal.Rptr. 493, 629 P.2d 1 (1981). Under these cases, however, the member spouse was required to pay the distributive share of his or her pension to the non-member spouse in regular installments out of current pre-retirement income. Thus, as the trial judge also recognized, none of these foreign cases support requiring the system to make an immediate pension payout, as was ordered in the instant matter. None of the cases required the retirement fund to make a payment that was not set forth in the controlling statute.
In this case, we conclude that the trial court's form of immediate distribution is not legally possible. Plaintiff has no right through the guise of equitable distribution to have any marital asset enhanced. Plaintiff's equitable share of defendant's pension must be determined "in accordance with the plan formula." Marx v. Marx, 265 N.J.Super. 418, 428, 627 A.2d 691 (Ch.Div.1993). A court may *1128 not re-write the pension statute under the guise of doing equity. The terms of the plan determine the parties' rights and entitlements. We may not vary the basic terms of the pension plan or confer benefits beyond those contemplated by the plan. Rather, distribution schemes must "conform to the plan's essential purpose." Weir v. Weir, 173 N.J.Super. 130, 135, 413 A.2d 638 (Ch.Div.1980). Trial courts, in fashioning equitable distribution, must be sensitive to whatever limitations exist in the nature of the particular asset being considered.
We are, of course, sympathetic to the admirable goals that motivated the trial court. We accept that plaintiff is in need of immediate income, and thus waiting until defendant retires to distribute his pension might be less than satisfactory. But, a court may satisfy a party's needs only in a lawful manner.
On remand, we suggest that the trial court consider other methods of generating immediate income for plaintiff. For example, defendant has an outstanding loan balance of $28,782.93. He may borrow an additional $19,447.90 from PFRS, and these monies could be used for immediate distribution to plaintiff as an offset against her expected pension benefit. Moreover, to provide some limited protection for plaintiff, the trial court could explore some of the insurance options that are available.
An active employee is entitled to death benefits for his beneficiaries in the amount of 250% of salary. N.J.S.A. 43:16A-9. Here, defendant's active coverage is $345,000. The trial court could order that defendant designate plaintiff as his beneficiary. This would provide some protection for plaintiff should defendant die before retiring.
Upon defendant's retirement, the amount of his death benefit from PFRS is reduced to approximately $49,000. Defendant has, however, the right to convert the difference, $296,000, into private insurance. The conversion of insurance is automatic upon the payment of a premium, regardless of the health or age of the applicant. N.J.S.A. 43:16A-58. Thus, this could provide some measure of protection for plaintiff should defendant die during his retirement, whether or not defendant has remarried.
PFRS also argued in its appeal that the financial integrity of the pension fund would be jeopardized by the trial court's order. Because we find the trial court's order to be unlawful for the reasons explained above, we need not decide whether the trial court's distribution threatens the fund's financial integrity.
We reverse LaSalla v. LaSalla, 324 N.J.Super. 264, 735 A.2d 52 (Ch.Div.1999), and remand the matter to the trial court for further proceedings in accordance with this decision.
Reversed and remanded.
NOTES
[1] In this appeal, the parties were referred to as LaSala.