870 A.2d 303 (2005)
376 N.J. Super. 246
Joseph T. MOORE, Plaintiff-Respondent,
v.
Roberta MOORE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 8, 2005.
Decided April 5, 2005.
Robert J. Lenrow, Oradell, argued the cause for appellant.
William T. Smith, Franklin Lakes, argued the cause for respondent (Hook, Smith & Meyer, attorneys; Mr. Smith, on the brief).
Before Judges LEFELT, FUENTES and FALCONE.
The opinion of the court was delivered by
LEFELT, J.A.D.
In an earlier decision involving plaintiff, Joseph T. Moore, and defendant, Roberta Moore, who divorced in 1985 after more than thirty-one years of marriage, we remanded for a hearing to determine whether defendant's one-third tax-free share of plaintiff's pension from the Teachers' Pension and Annuity Fund (TPAF) was to be calculated as of the date of divorce or the date of plaintiff's retirement. On the remand, the trial court determined that the latter option fulfilled the parties' intent, and neither plaintiff nor defendant objects *304 to that determination. Instead, defendant in this appeal objects to the trial court's further determination that plaintiff has no obligation to pay defendant until plaintiff retires. Defendant contends that because plaintiff, who is a tenured professor at Montclair State University, continues to work beyond age seventy despite the parties' reasonable expectation that he would have retired at age sixty-five or at the latest age seventy, she was entitled to her pension share from plaintiff's present income beginning when plaintiff reached age seventy. Defendant also claims the trial court erred in denying her request for counsel fees. We find some merit in defendant's contentions, and reverse and remand.
The trial court's conclusion that plaintiff had no obligation to pay defendant any part of his pension "until he does retire" was based on the judge's fact finding that "there was no cutoff date, that there was no requirement that [plaintiff] retire.... [and that defendant's argument] that he has to now retire at 70 or pay [defendant] a distribution prior to retirement is not based on any evidence."
The judge based this finding on defendant's divorce attorney's testimony that in 1997, when plaintiff was about sixty-five years of age, there was no understanding of any fixed date for plaintiff's retirement. Indeed, when attempting to have plaintiff sign the Qualified Domestic Relations Order drafted by defendant's attorney, the attorney wrote plaintiff commenting that he did not need to stop work and that he could continue to work for another five years or more. However, that testimony relates to 1997 and did not relate to the situation in 1985, when plaintiff was about fifty-three years old and the property settlement agreement was negotiated and executed.
In 1985, according to defendant, the parties considered retirement age to be sixty-two or sixty-five. In addition, N.J.S.A. 18A:66-43(b) was in existence[1] and specifically mandated retirement for TPAF members at age seventy. The existence of this statute in 1985 supports a reasonable belief by the parties that a college professor in the TPAF could not work beyond age seventy.[2]
Furthermore, the judge relied on plaintiff's testimony about the property settlement, which according to the judge, revealed that "[t]here was no discussion of retirement age." Actually, plaintiff testified that at the time of the divorce, he was not going to retire, which is of course not the point, and that he could not recall at that time "any discussions regarding [his] planned retirement."
Defendant in her testimony, however, explained that she believed that plaintiff would have to retire at age seventy in accordance with the statute. Her lawyer also acknowledged the existence of the statute and explained that at the time he knew that the statute required retirement *305 at age seventy for New Jersey teachers because his mother had been a teacher.
The lawyer also explained why the parties made this "unusual arrangement." He testified that defendant "could have had more alimony if she had wanted to try the case on alimony, but she agreed to take a limited amount of alimony for a limited amount of time." In return, plaintiff "agreed to provide her with her share of the pension, but not value it at that time with that fraction, but rather to value it at the time that he left his employment or retired." Defendant realized, according to the lawyer, that she was unlikely to be able to earn as much money as plaintiff could as she had not been in the work force and did not have his advanced degrees. She felt that the pension would provide support when she was in her seventies and even less likely to be able to earn sufficient monies for her own support.
After considering all the testimony, along with N.J.S.A. 18A:66-43(b), and the absence of any actual conflicting testimony by plaintiff who simply could not recall any discussion about his retirement plans, we conclude that the competent credible evidence supports defendant's contention that both parties expected in 1985 that plaintiff would have to retire, at the latest, by age seventy. The judge's finding to the contrary is not supported by sufficient credible evidence in the record, and is rejected. Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974).
When these parties divorced, there were only two assets of any significance, the marital home, appraised at $123,000, and plaintiff's pension. The marital home was equitably distributed to plaintiff and defendant equally. Defendant, with the assistance of an inheritance, bought plaintiff's share of the home, lived there for some time, and recently sold the home for $365,000. The record does not reflect how defendant has used these funds.
In providing for distribution of plaintiff's pension in the December 1984 settlement agreement, which was incorporated into the 1985 divorce judgment, the parties agreed that defendant shall be entitled to her share of plaintiff's pension when plaintiff "retires or otherwise leaves his present employment for whatever reason." Thus, plaintiff's continued employment beyond age seventy appears not to be in violation of the agreement's literal language.
Plaintiff's voluntary decision to continue working beyond age seventy, when both parties anticipated his retirement would occur, disadvantages defendant, however. Plaintiff earns over $87,000 annually as contrasted with defendant's annual income of approximately $11,000. No matter how much money plaintiff earns, his continued employment risks not only his pension interest, but also defendant's. Should plaintiff die before retiring, his entire pension would be forfeited, along with defendant's share.
By continuing to work, he also dissipates the value of the equitable distribution that his ex-wife bargained for many years ago and counted upon for economic security in her later years. According to TPAF, it would calculate plaintiff's maximum pension by taking his years of service, approximately forty-seven years, and dividing by fifty-five to generate a percentage. TPAF would then multiply that percentage by his final average salary, of approximately $87,000. Using these figures, for example, plaintiff's maximum pension would be $74,345 annually or about $6,195 monthly. Of the monthly amount, defendant's one-third share would be approximately $2,065. Thus, each year that plaintiff continues working defendant loses approximately $2,065 monthly or $24,780 annually.
*306 Although the maximum pension increases as plaintiff's years of service increase, considering defendant's life expectancy, the amount of the increase would not allow defendant to recover the amount she loses each year plaintiff chooses work over retirement. For example, assuming plaintiff works three more years and achieves an average salary of $95,000, his monthly pension would be $7,197 and defendant's share would be $2,399. Thus, defendant's share would increase only by $334 and she would recover each year only $4,008 of the $24,780 she would have earned annually had plaintiff retired three years earlier.
Under these circumstances, plaintiff's voluntary decision to continue working compels a court of equity to intervene. See Deegan v. Deegan, 254 N.J.Super. 350, 355, 603 A.2d 542 (App.Div.1992). "[T]he pre-existing duty which runs between spouses who have been in a marriage which has failed" must be enforced to prevent plaintiff from disadvantaging his former spouse. Id. at 359, 603 A.2d 542. Rule 4:50-1(f) can be utilized to modify the divorce judgment to prevent further devaluation, or perhaps total loss, of defendant's interest in plaintiff's pension. See Linek v. Korbeil, 333 N.J.Super. 464, 474, 755 A.2d 1229 (App.Div.), certif. denied, 165 N.J. 676, 762 A.2d 657 (2000) (dealing with an early retirement).
The TPAF will not pay plaintiff's pension until he retires. See La Sala v. La Sala, 335 N.J.Super. 1, 10, 760 A.2d 1122 (App.Div.2000), certif. denied, 167 N.J. 630, 772 A.2d 932 (2001). However, as we indicated was possible in La Sala, plaintiff can be directed to pay defendant's prospective share of his pension out of his pre-retirement income, or to borrow the funds necessary to make the payments as long as he continues to devalue and risk defendant's pension share by continuing to work beyond the date when the parties expected him to retire. Id. at 11-12, 760 A.2d 1122; see also Furia v. Furia, 692 A.2d 327, 328 (R.I.1997).
Plaintiff nevertheless argues that pre-retirement payments are unwarranted because by working, he shares the same risk of pension loss to which he exposes defendant. This argument has some merit for the usual pension situation where neither party reasonably relied upon any specific retirement age, and no bad faith is evident. The situation in this case is unusual, however, because of N.J.S.A. 18A:66-43(b) and defendant's reasonable reliance upon its terms.
Therefore, we hold that because a particular retirement date was reasonably expected and relied upon, plaintiff may be compelled to provide defendant with pre-retirement payments of her share of plaintiff's pension for each month that plaintiff chooses to continue working beyond the expected retirement date. In other words, plaintiff can choose to risk his own pension, but he should not be allowed to risk defendant's share of the pension.
The parties have not exchanged economic information, however, and we were advised at oral argument that plaintiff plans to retire shortly. In the absence of clear financial information, we cannot determine the precise amount or method of funding that would be appropriate and equitable under these circumstances, and therefore, we must again remand to the trial court. Once the trial court decides the amount and funding method, plaintiff's payments shall begin after the date of this decision and continue for each month plaintiff continues to work at the University.
We add that our holding may support retroactive payments from the time plaintiff became seventy years of age, on January 2, 2002. Because we have neither full financial information nor any testimony on *307 both parties' current economic situations, however, we cannot determine whether equitable considerations should prevent full retroactivity of plaintiff's pre-retirement payments to defendant.
Retroactivity may be precluded if such payments would be particularly harsh or oppressive. When dealing with support arrearages, for example, "equitable considerations dictate whether, and to what extent, the defending husband should be forced to pay arrearages." Dunne v. Dunne, 209 N.J.Super. 559, 573, 508 A.2d 273 (App.Div.1986) (quoting Tancredi v. Tancredi, 101 N.J.Super. 259, 261, 244 A.2d 139 (App.Div.1968)). See also Garvey v. Tp. of Wall, 303 N.J.Super. 93, 104, 696 A.2d 71 (App.Div.1997) (dealing with a municipality charging excessive or discriminatory fees to users of municipal services). Accordingly, besides determining the amount to be paid defendant and the means of funding the prospective monthly payments, we also remand for a determination of whether retroactivity should be ordered, and if so, how much should be mandated and what the terms of payment should be.
In addition, we cannot determine from the record whether the trial court considered all of the Rule 5:3-5(c) factors in deciding not to award defendant counsel fees. In the remand, therefore, we also direct the trial court to reconsider its counsel fee decision.
Reversed and remanded for further proceedings in conformity with this decision.
NOTES
[1] The statute was enacted in 1967 and became effective on January 11, 1968 (L. 1967, c. 271).
[2] The TPAF no longer enforces this provision because of controlling federal law. The Age Discrimination in Employment Act, 29 U.S.C.A. § 621 to 634 (ADEA), for example, applies to mandatory retirements, and generally, unless exempted, see 29 C.F.R. § 1625.11 to 1625.12, precludes mandatory retirement for most employees over the age of forty. The ADEA, upon becoming effective in 1987, specifically permitted compulsory retirement of tenured college professors. 29 U.S.C.A. § 631(d). This section, however, had a sunset provision that expired on December 31, 1993, Pub.L. No. 99-592 § 6(b), and was not reenacted. Accordingly, unless a specific exemption applies, the ADEA now protects tenured college professors from forced retirement. See 29 C.F.R. § 1625.9.