NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1563-15T2

DONNA S. SECK,

 Plaintiff-Respondent,

v.

THEODORE R. SHALACK,

 Defendant-Appellant.

____________________________________________

 Submitted May 2, 2017 – Decided May 31, 2017

 Before Judges Yannotti and Gilson.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Middlesex
 County, Docket No. FM-12-1303-11.

 Law Office of Edward Fradkin, LLC, attorneys
 for appellant (Edward P. Fradkin, of counsel
 and on the briefs).

 George G. Gussis, PA, attorneys for respondent
 (George G. Gussis, of counsel and on the
 brief; Puya Joseph Nili, on the brief).

PER CURIAM

 Defendant appeals from provisions of an order entered by the

Family Part on June 16, 2015, which determined defendant's share
of plaintiff's retirement account, and gave plaintiff credits for

the value of a discarded household rug, and her share of

defendant's retirement accounts. Defendant also appeals from an

order entered by the court on November 16, 2015, which awarded

plaintiff attorney's fees. We affirm in part, reverse in part, and

remand the matter to the trial court for further proceedings.

 I.

 The parties were married on October 6, 1996, and no children

were born of the marriage or legally adopted. On December 20,

2010, plaintiff filed a complaint for divorce. The trial court

entered a dual final judgment of divorce dated October 25, 2011,

which dissolved the marriage and incorporated the parties'

matrimonial settlement agreement (MSA).

 Article VII of the MSA addresses equitable distribution.

Section 7.4 of the MSA states in pertinent part that the parties

had certain pension, retirement, or deferred-income accounts,

which would be distributed or retained solely by one party in the

manner specified. The MSA provides that the marital portion of

plaintiff's TIAA/CREF account would be split on a fifty-fifty

basis.1 Section 7.4 states that the marital portion of this account

consists of the funds accumulated through the date upon which

1
 "TIAA-CREF" is the Teachers Insurance and Annuity Association,
College Retirement Equities Fund.

 2 A-1563-15T2
plaintiff filed her complaint for divorce, plus or minus any

fluctuation in value due to the market, "less [plaintiff's]

premarital portion of $39,444.92 (plus/minus any fluctuation in

value attributable to the premarital portion)."

 Section 7.4 of the MSA further provides that defendant had

an E-Trade Roth Individual Retirement Account (IRA) and a Wells

Fargo IRA. The MSA states that plaintiff was entitled to one-half

of the contributions to the E-Trade IRA made from the date of the

marriage to the date upon which the divorce complaint was filed,

"together with the market gains and losses thereon." In addition,

the MSA states that plaintiff is entitled to "the marital

coverture" portion of the Wells Fargo IRA "together with market

gains and losses thereon."

 Section 7.4 also states that plaintiff's TIAA/CREF account,

and defendant's E-Trade and Wells Fargo IRAs each would be

distributed in accordance with a Qualified Domestic Relations

Order (QDRO). The MSA states that pension appraisers would prepare

the QDROs, and the parties would equally share the costs of

preparing the QDROs.

 In addition, Section 7.3 of the MSA provides that the parties

would each keep the household furnishings and personalty in their

possession, but plaintiff would be entitled to certain items listed

on Exhibit A to the MSA. Exhibit A states that, among other items,

 3 A-1563-15T2
plaintiff was to keep possession of a "multi-color rug" with a

size of approximately five-by-seven feet.

 On March 17, 2014, plaintiff filed a motion in the trial

court which sought, among other relief, a determination that

defendant's share of plaintiff's TIAA/CREF account is $144,037.17;

application of plaintiff's portion of defendant's E-Trade and

Wells Fargo IRAs as an offset to defendant's share of the TIAA/CREF

account; a credit of $2395 for a "Persian Rug" defendant had

discarded; and the award of attorney's fees.

 In support of her motion, plaintiff submitted a certification

in which she stated that a pension valuation had been performed,

which indicated that as of December 27, 2013, the value of the

TIAA/CREF account was $524,366.41, of which $327,519.26 was

eligible for distribution based upon application of a .6246

"reduction for marital coverture." Plaintiff asserted that the

equitable distribution amount of the TIAA/CREF account was

$327,519.26, less $39,444.92 for her premarital contributions, or

$288,074.34. Plaintiff stated that defendant's share of the

account was one-half of this amount, or $144,037.17.

 Plaintiff noted that defendant had objected to this

calculation and stated that he believed plaintiff's premarital

portion of the account was limited to $39,444.92. Plaintiff stated

 4 A-1563-15T2
that defendant claimed that he was entitled to $242,460.75, which

is one-half of $524,366.41, minus $39,444.92, or $484,921.49.

 Plaintiff noted that she began her employment at a university

on April 4, 1988, and married defendant on October 6, 1996. She

stated that she had contributed to the TIAA/CREF account for eight

years before the marriage, and her premarital contributions were

"substantially more than $39,444.92." She asserted that defendant

would be unjustly enriched if he was entitled to $242,460.75, as

he claimed.

 In addition, plaintiff stated that defendant's E-Trade IRA

was "all marital" and had a value of $7659.91. She asserted that

her share of the account was $3829.96. She also said that

defendant's Wells Fargo IRA was "all marital" and had a value of

$43,239.80. She stated that her share of this account was

$21,619.90.

 Plaintiff further asserted that defendant had not turned over

the "Persian Rug" to her, as required by the MSA. She noted that

defendant had acknowledged he discarded the rug. Plaintiff stated

that she went to the department store where the rug was purchased

and obtained an estimate of "the approximate value of the rug."

According to plaintiff, the store had provided a note indicating

the rug "was worth" $2395.

 5 A-1563-15T2
 Defendant opposed plaintiff's motion, and filed a pro se

cross-motion seeking an order finding that he was entitled to

47.94 percent of plaintiff's TIAA/CREF account. In a certified

statement dated June 4, 2014, defendant asserted that plaintiff

was bound by the terms of the MSA, which stated that her premarital

portion of the TIAA-CREF account was $39,444.92. He stated that

this provision of the MSA had been negotiated, reviewed, and agreed

upon by the parties and their attorneys.

 Defendant also stated that as of December 31, 2010, the

marital portion of the TIAA/CREF account was $484,921.49, which

was the balance of $524,366.41, less the agreed-upon premarital

portion of $39,444.92. He asserted that his share of the account

was one-half of the marital portion of the account, or $242,460.74.

Defendant asserted that he would be entitled to 46.24 percent of

the account.

 He noted, however, that a QDRO had been prepared and submitted

to the TIAA/CREF using the "transfer percentage" of 46.24, but

this was "problematic." Defendant said plaintiff's account

consisted of a Transfer Payout Annuity (TPA) in the amount of

about $18,000, plus six other non-TPA certificates. Defendant

stated that the TPA had certain restrictions that affected its

division. Defendant therefore asserted that plaintiff should be

 6 A-1563-15T2
permitted to retain 100 percent of the TPA, and he should be

awarded 47.94 percent of the other six certificates.

 Defendant also asserted that market fluctuations had

increased the account balance by forty percent as of February 28,

2014. He asserted that this increase would apply to the marital

and premarital portions of the account. He said the increase in

value would not affect the percentage of his share of the TIAA/CREF

account as of the date of distribution.

 The court entered an order dated July 8, 2014, which granted

plaintiff's motion and determined that defendant's share of

plaintiff's TIAA/CREF account was $144,037.17. The court deducted

plaintiff's premarital portion of $39,444.92 from the equitable

distribution amount of $327,519.26, leaving $288,074.34 to be

divided equally between the parties.

 The court also gave plaintiff a credit of $2395 for the

"Persian Rug" that defendant had discarded, noting on the order

that plaintiff's application for this credit had been unopposed.

In addition, the court denied without prejudice plaintiff's motion

to apply her share of the E-Trade and Wells Fargo IRAs to

defendant's share of the TIAA/CREF account. The court ordered

defendant to prepare QDROs regarding these accounts within ten

days.

 7 A-1563-15T2
 Thereafter, defendant retained counsel, and on July 28, 2014,

defendant's attorney filed a motion for reconsideration of the

court's determination of defendant's share of the TIAA/CREF

account, and the decision to grant plaintiff a credit of $2395 for

the rug. In support of the motion, defendant submitted a statement

from TIAA/CREF, which indicated that as of September 30, 1996,

plaintiff's account had a value of $39,444.92.

 Defendant also stated he did not know the rug that plaintiff

identified for the department store's salesperson. He pointed out

that the note provided to the court indicated that a five-by-

eight-foot rug had a price of $995. In response, defendant

submitted a certified hand-written note from the salesperson, who

wrote that when plaintiff came to the store, she did not have a

receipt for the rug. The salesperson wrote that plaintiff did not

have his permission to use the price quote in a court filing.

 Plaintiff opposed the motion and filed a cross-motion

seeking, among other relief, attorney's fees for responding to the

motion. In her certification, plaintiff asserted that the

provision of the MSA regarding the TIAA/CREF account might be

ambiguous, but it could only be interpreted in one of two ways.

She asserted that

 [t]he equitable distribution portion is either
 $327,519.26 minus $39,444.92 or $288,074.34,
 or merely [one-half] of $327,519.26. It is

 8 A-1563-15T2
 clearly not more than one-half of the marital
 share of $327,519.26. Therefore,
 [d]efendant's share is either $144,037.17 or
 $163,759.63. Either way, it is significantly
 less than what the [d]efendant is trying to
 receive.

 Plaintiff further asserted that her premarital contributions

to the TIAA/CREF account had grown over twenty-two years, and

those contributions were worth substantially more than $39,444.92.

In addition, plaintiff noted that defendant had not submitted the

QDROs for the E-Trade and Wells Fargo IRAs, as required by the

court's order.

 Plaintiff also addressed the court's decision giving her a

credit for the rug. She stated that the rug mentioned on the list

in the MSA was the rug she had previously referred to as a "Persian

Rug." Plaintiff said defendant had discarded the rug after the

divorce, and she went to the department store to find a similar

rug.

 Plaintiff stated that the rug was on sale the day she went

to the store, but there was "no guarantee that it would be on sale

if [she] were to purchase it again in the future." She said the

rug that defendant discarded was in good condition. She stated

that the court should adhere to the prior decision, giving her a

credit of $2395 for the rug.

 9 A-1563-15T2
 The court entered an order dated June 16, 2015, which granted

defendant's motion in part. The order states that defendant's

share of the TIAA/CREF account was $163,759.63, less the credit

to plaintiff of $2395 for the "Persian Rug," or $161,364.63. The

court directed defendant to provide copies of statements related

to the E-Trade and Wells Fargo IRAs within five days after the

date of the order. The court reserved the decision on plaintiff's

application for attorney's fees.

 The court entered another order dated July 27, 2015. The

order states that defendant had not provided the court with the

statements regarding the E-Trade and Wells Fargo IRAs, as required

by the prior order. The July 27, 2015 order authorized plaintiff's

counsel to obtain copies of the statements with a power of

attorney.

 Defendant then filed a notice of appeal from the June 16,

2015 order. The clerk of this court advised defendant's attorney

that, because the trial court had not ruled on plaintiff's

application for attorney's fees, the order was not a final order

and not appealable as of right pursuant to Rule 2:2-3(a). Defendant

withdrew his appeal.

 In October 2015, plaintiff's attorney provided the trial

court with copies of the statements he had obtained for the E-

Trade and Wells Fargo IRAs. The court then entered an order dated

 10 A-1563-15T2
November 16, 2015, which granted plaintiff's motion for a fifty

percent share of the E-Trade and Wells Fargo accounts. The court

determined that plaintiff's share of these accounts totaled

$25,573.01, which would be deducted from defendant's share of the

TIAA/CREF account. The court also awarded plaintiff counsel fees.

This appeal followed.

 On appeal, defendant argues that the trial court erred in the

equitable distribution of plaintiff's TIAA/CREF account. He argues

that the court should not have given plaintiff a credit for her

share of his IRAs because these accounts should have been divided

by QDROs. He further argues that the court erred by giving

plaintiff credit of $2395 for the rug. In addition, defendant

argues that the court erred by awarding plaintiff attorney's fees.

 II.

 We turn first to defendant's contention that the trial court

erred in the equitable distribution of plaintiff's TIAA/CREF

account and defendant's E-Trade and Wells Fargo IRAs. Defendant

contends the court erred by failing to enforce the relevant

provisions of the MSA with regard to these assets. We disagree

with these arguments.

 Generally, decisions allocating marital assets in equitable

distribution are committed to the sound discretion of the trial

court. La Sala v. La Sala, 335 N.J. Super. 1, 6 (App. Div. 2000),

 11 A-1563-15T2
certif. denied, 167 N.J. 630 (2001). We will not reverse a trial

court decision on equitable distribution unless shown to be a

mistaken exercise of discretion. Ibid. We will affirm the trial

court's decision if it "could reasonably have reached its result

from the evidence presented, and the award is not distorted by

legal or factual mistake." Ibid.

 A. The TIAA/CREF Account

 As we have explained, the record shows that as of December

27, 2013, plaintiff's TIAA/CREF account had a present value of

$524,366.41. The appraisal determined that the marital portion of

the account was $327,518.26. In its order of June 16, 2015, the

trial court found that defendant's share of the account was fifty

percent of $327,518.26, or $163,364.53. In reaching that decision,

the trial court accepted the calculation in the pension appraisal,

which determined the marital portion of the account using a

coverture percentage of .6246.

 It is well established that a coverture fraction can be

employed to determine the portion of a marital asset that is

subject to equitable distribution. Barr v. Barr, 418 N.J. Super.

18, 34 (App. Div. 2011). The coverture fraction is

 the proportion of years worked during the
 marriage to total number of years worked. The
 numerator represents that portion of the
 benefit, enhanced or not, that was "legally
 and beneficially acquired" during the

 12 A-1563-15T2
 marriage. The denominator is the total number
 of years worked up to retirement. The
 coverture fraction insures that the equitable
 distribution pot includes only that portion
 of the working spouse's labor which
 constitutes a "shared enterprise." It also
 assures the employee spouse the benefits of
 his or her pre and post coverture labors.

 [Eisenhardt v. Eisenhardt, 325 N.J. Super.
 576, 580-81 (App. Div. 1999) (citations
 omitted).]

 On appeal, defendant contends the court erred by failing to

enforce the provision of the MSA pertaining to the distribution

of the TIAA/CREF account. He argues that under the MSA, plaintiff's

premarital contributions to the account are limited to $39,444.92,

plus or minus fluctuations due to the market.

 The MSA states that the marital share of the TIAA/CREF account

would be subject to equitable distribution. The pension appraisal

reasonably determined the marital share of the account using a

coverture fraction. By using the coverture fraction, and applying

it to the present value of the account, the appraisal reasonably

determined the amount of plaintiff's premarital contributions and

amount by which those contributions had increased in value, due

to market fluctuations.

 We reject defendant's contention that by using the coverture

fraction in the pension appraisal, the trial court erroneously

failed to enforce the relevant provision of the MSA. Defendant

 13 A-1563-15T2
argues that plaintiff's contributions were limited to $39,444.92,

but he failed to give plaintiff any credit for any increase in

value attributable to market fluctuations. The court reasonably

based its analysis on the evidence before it, and defendant

provided the court with no credible evidence to determine the

marital portion of the account differently.

 Accordingly, we affirm the trial court's finding that

defendant's share of the TIAA/CREF account is $163,759.63.

 B. The E-Trade and Wells Fargo IRAs

 We turn to defendant's contention that the trial court erred

by giving plaintiff a credit for her share of the E-Trade and

Wells Fargo IRAs, rather than having the parties prepare and submit

QDROs for later distribution of these assets. Defendant argues

that the court erred by departing from the distribution scheme

spelled out in the MSA.

 We reject these arguments for several reasons. The record

shows that the trial court ordered defendant to prepare QDROs for

the distribution of these accounts, and he failed to comply with

the court's order. The court then ordered defendant to provide

statements for these accounts. Defendant again failed to comply

with the court's order. The court ultimately authorized

plaintiff's counsel to obtain the information about the accounts,

with a power of attorney.

 14 A-1563-15T2
 We conclude that, by repeatedly failing to comply with the

court's orders regarding these accounts, defendant waived any

right he may have had to enforce the provision of the MSA requiring

division of the IRAs using QDROs. Furthermore, granting plaintiff

a setoff for the present value of the accounts was appropriate

because it would eliminate further disagreements between the

parties concerning these accounts, and avoid the need for the

parties to return to court to address any issue that may arise.

 Defendant argues that giving plaintiff a credit for her share

of the IRAs could have unintended tax consequences, but defendant

never raised that issue in the trial court. Defendant also asserts

that at the very least, the trial court should have conducted an

evidentiary hearing on this issue. However, defendant did not

request such a hearing, and he did not provide the trial court

with any evidence regarding the alleged adverse tax consequences

that may result by granting plaintiff the setoff.

 We conclude that, in determining the amount of defendant's

share of the TIAA/CREF account, the trial court did not abuse its

discretion by granting plaintiff a credit for her share of the E-

Trade and Wells Fargo IRAs.

 III.

 We next consider defendant's contention that the trial court

erred by giving plaintiff a credit of $2395 for the so-called

 15 A-1563-15T2
"Persian Rug." Defendant contends there was insufficient credible

evidence to support the court's finding that the rug had a value

of $2395. We note that, when plaintiff first sought compensation

for the rug, defendant did not oppose her application.

 Indeed, the record shows that defendant did not raise this

issue until he filed a motion seeking reconsideration of the July

8, 2014 order, which granted plaintiff the $2395 credit. We

nevertheless conclude that the decision to grant plaintiff this

credit was erroneous.

 The trial court's findings of fact "are binding on appeal

when supported by adequate, substantial credible evidence." Cesare

v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort,

Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)). The trial

court's finding that plaintiff was entitled to a credit of $2395

for the discarded rug is not supported by sufficient credible

evidence in the record.

 It is undisputed that in the MSA, the parties agreed that

plaintiff could retain a household rug, which was described in the

MSA as a "multi-color rug" with a size of approximately five-by-

seven-feet. The parties agree that defendant was required to turn

over the rug to plaintiff, and he failed to do so. It is also

undisputed that defendant discarded the rug.

 16 A-1563-15T2
 In granting plaintiff the credit of $2395 for the rug, the

court relied upon a handwritten note prepared by a salesperson in

the store where the rug was purchased. There is no evidence showing

the date when the rug was purchased, or the price paid for the

rug. The salesperson's note indicates that some rug cost $2395,

but it was on sale at a sixty percent reduction, for $995. The

trial court erred by basing its finding on this submission.

 First, there is no indication in this record that the rug

referred to in the salesperson's note is the same or similar to

the parties' household rug. Indeed, the note indicates that the

salesperson provided a price for a rug of a different size.

Moreover, the price that the salesperson provided apparently was

for the purchase of a new rug. Plaintiff did not establish that

she is entitled to the cost to replace the rug, rather than the

value of the household rug that was thrown out.

 In addition, the salesperson's price quote indicates that a

new rug could have been purchased on sale for $995. Plaintiff

asserted that there was no assurance the rug would have been on

sale when she went to purchase it, but the price quote makes clear

the that plaintiff could have acquired the rug in the store at a

price substantially less than $2395.

 We therefore conclude that the trial court's finding that

plaintiff is entitled to a credit in the amount of $2395 for the

 17 A-1563-15T2
discarded rug is not supported by sufficient credible evidence in

the record. We reverse the provision of the order granting

plaintiff the credit for the rug and remand the matter to the

trial court for reconsideration of this determination.

 On remand, the court should afford the parties the opportunity

to present further evidence regarding the value of the discarded

rug. If plaintiff fails to present additional evidence on this

issue, her claim should be denied. If the parties present further

evidence that raises a genuine issue of material fact, the court

should conduct a plenary hearing to determine the amount, if any,

that should be awarded to plaintiff for the discarded rug.

 IV.

 Defendant also argues that the trial court erred by awarding

plaintiff attorney's fees. Defendant contends the trial court

failed to consider the factors enumerated in N.J.S.A. 2A:34-23 and

Rule 5:3-5(1)(c), and did not make adequate findings of fact.

 In its order of November 16, 2015, the court awarded plaintiff

a total of $3795, which represents the award of $2153 to Veronica

Norgaard, and $1642 to Kostantin Feldman and George G. Gussis. In

March 2014, Ms. Norgaard submitted a certification of services

seeking $4425 for plaintiff's initial motion. In August 2014, Ms.

Norgaard sought an additional $4223.50 for responding to

defendant's motion for reconsideration. It appears that Mr.

 18 A-1563-15T2
Feldman and Mr. Gussis later substituted for Ms. Norgaard, and in

October 2015, sought attorney's fees and costs in the amount of

$3284.50 for the time they devoted to the case.

 The court did not award plaintiff all of the fees sought, and

did not explain the reasons for the award. Furthermore, the court

did not relate the award to specific tasks or results, and did not

make the necessary findings required by N.J.S.A. 2A:34-23 and Rule

5:3-5(c). In view of our decision reversing the court's order in

part, we are convinced that the award of counsel fees must be

reversed as well. On remand, the trial court should reconsider the

award.

 Affirmed in part, reversed in part, and remanded to the trial

court for further proceedings in conformity with this opinion. We

do not retain jurisdiction.

 19 A-1563-15T2