**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2629-21

NAGLA ABOUELENEIN,

    Plaintiff-Respondent,

v.

NABIL SABBAHI,

    Defendant-Appellant.

_____

        Submitted December 5, 2023 – Decided April 17, 2024

        Before Judges Sumners and Rose.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-1570-19.

        Arndt, Sutak & Miceli, LLC, attorneys for appellant (Lauren Ann Miceli and Alison J. Sutak, on the briefs).

        Sidoti Law Firm, LLC, attorneys for respondent (F. Thomas Sidoti, on the brief).

PER CURIAM

The parties divorced following an almost thirty-six-year marriage. Defendant appeals provisions of the August 25, 2022 amended final judgment of divorce (AFJOD)[1] awarding equitable distribution of property in Egypt, the parties' country of origin, to plaintiff and requiring him to pay pendente lite arrears and plaintiff's attorney's fees and costs ( "attorney's fees").  Defendant contends the distribution of marital funds was not supported by credible evidence in the record; the pendente lite award failed to credit payments he made; and the attorney's fees award was an abuse of discretion.  We disagree and affirm substantially for the thoughtful reasons set forth in Family Part Judge Andrea J. Sullivan's statement of reasons.

Our review of a Family Part order is limited.  See Cesare v. Cesare, 154 N.J. 394, 411 (1998).  We "review [a] Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare, 154 N.J. at 413).  Such deference is particularly proper "when the evidence is largely testimonial and involves questions of credibility."  Cesare, 154 N.J. at 412 (quoting In re Return of Weapons to

---

[1]  After defendant initially appealed the final judgment of divorce, we granted his motion for temporary remand and retained jurisdiction.  On remand, the AFJOD was entered, which defendant now challenges.

J.W.D., 149 N.J. 108, 117 (1997)).  "Thus, 'findings by the trial [judge] are binding on appeal when supported by adequate, substantial, credible evidence.'" Thieme, 227 N.J. at 283 (quoting Cesare, 154 N.J. at 411-12).  "Only when the trial [judge's] conclusions are so 'clearly mistaken' or 'wide of the mark' should we interfere."  Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)).  However, we review legal issues de novo.  Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017).

Distribution of Marital Assets

Defendant challenges the AFJOD's distribution to plaintiff of two properties he owned in Egypt:  No. 147 Vista Marina Village in North Coast and No. 4 Southern Lotus, Fifth Settlement—a twelve-unit apartment building—in New Cairo City.[2]  Defendant argues the judge erred in not crediting his testimony that he did not own the Egyptian properties but crediting plaintiff's evidence that he owned the properties absent proof he transferred money from marital accounts to purchase the properties or of deeds showing his ownership interest.  This notwithstanding, according to defendant, the judge relied on the

_____

[2] Defendant does not contest plaintiff's award of $68,276.50, representing fifty percent of two marital bank accounts he dissipated, or one of the two City of Newark taxicab medallions he owned.  The judge awarded two other Egyptian properties to defendant.

same trial evidence to reject plaintiff's claim that he owned other Egyptian properties. Defendant argues plaintiff presented no evidence demonstrating the properties were sold during the parties' marriage. Defendant argues the judge erred in allowing plaintiff's expert to present a net opinion regarding the properties' value, asserting there was no evidence relating to the customs or legality of real estate transactions in Egypt, particularly plaintiff's allegation that no deeds exist for properties in certain locations. Additionally, defendant asserts the judge prevented him from presenting rebuttal witnesses addressing issues raised during trial.

We are unpersuaded by defendant's contentions. Our review of the record reveals the judge's equitable distribution award was a proper exercise of her broad discretion, Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012), and reasonably based on "the evidence presented, and [was] . . . not distorted by legal or factual mistake," La Sala v. La Sala, 335 N.J. Super. 1, 6 (App. Div. 2000). The credible evidence in the record supports the judge's determination that defendant owned properties subject to equitable distribution, and she did not abuse her discretion in precluding defendant's purported evidence to refute plaintiff's evidence regarding the properties.

Plaintiff alleged defendant transferred marital assets to purchase property in Egypt, including "two rental beach apartments in Alexandria, an apartment in Cairo, a [twelve]-unit residential apartment complex in Cairo that was under construction at the time of the [divorce] [c]omplaint, two commercial properties rented out to stores, agricultural land, and another undeveloped plot of land." The judge found defendant "used the bulk of the marital estate" to purchase No. 147 Vista Marina Village; No. 4 Southern Lotus, Fifth Settlement; No. 328 at El Zomoroda Village in North Coast; and No. 7 Lotus District Fifth Settlement in New Cairo City. The judge directed defendant to transfer title to the first two properties to plaintiff.

These factual findings were based on the judge's determination that plaintiff presented the following credible evidence: her testimony as well as that of the parties' daughter and a family friend, who all indicated defendant admitted to ownership of the properties; photos of the properties; an audio recording wherein defendant admitted ownership; and plaintiff's real estate expert's testimony regarding the appraised values of the properties, except

Cornish Tura, Police Building;[3] and Egyptian "government records showing [d]efendant's ownership and [construction] efforts." The judge found plaintiff "answer[ed] questions on both direct and cross[-]examination carefully, [made] good eye contact with the examiner and the [c]ourt[,] and overall appeared to try to respond fully and completely." In contrast, the judge discredited defendant's testimony, finding he "utterly lacked credibility," and "[h]is failure to answer discovery adequately, and late additions of witnesses (mid[-]trial), added to the . . . conclusion that [d]efendant deliberately failed to provide discovery for the purpose of evading [p]laintiff's ability to make her proofs." The judge also found defendant "was evasive in his response to cross[-]examination and to questions posed by the [c]ourt."

For example, during the trial, defendant recanted his previous claim that he did not own the property where the twelve-unit apartment building was under construction, admitting he had owned it but sold it in 2015. Defendant's testimony was belied on cross-examination when he was presented government documents showing his ownership interest and construction license to the

---

[3] The judge determined there was insufficient evidence showing defendant owned Cornish Tura, Police Building; there was no address or appraisal of the property.

6

building after 2015. He countered that the property's buyer applied for a construction license in his name, even though he no longer owned the property. Without any factual proof of this fraudulent activity, defendant's testimony is incredulous.

Regarding plaintiff's expert witness, the judge did not allow plaintiff to present an inadmissible net opinion regarding the value of the Egyptian property. The expert's testimony was supported by factual evidence. See Townsend v. Pierre, 221 N.J. 36, 53-54 (2015) (citing Polzo v. County of Essex, 196 N.J. 569, 583 (2008)); N.J.R.E. 703. The expert, an appraiser with the Egyptian Economic Courts and Ministry of Supply and Internal Trade for thirty years, set forth his methodology in valuing the properties, reviewed pertinent documents, and visited the properties. In short, beyond giving conclusions, the expert gave "'the why and wherefore' that support[ed] [his] opinion." Townsend, 221 N.J. at 53-54 (citation omitted). Consequently, the judge did not abuse her discretion in admitting the expert's testimony.

With respect to the judge's denial of defendant's attempt to present two witnesses to "testi[fy] as to [the properties'] ownership and value after the trial commenced," the ruling should stand. The judge rejected defendant's contention that the witnesses should have been allowed to testify without prior notification

7

because they were rebuttal witnesses. They were not. Plaintiff disclosed her witnesses and the scope of their testimony, making defendant fully aware of her evidence prior to trial. In his pretrial submission, defendant indicated he would be the only witness to testify on his behalf and, in his discovery responses, he did not disclose he would present any witnesses to testify regarding the Egyptian properties. Defendant cannot present witnesses through the backdoor, claiming they were for "rebuttal" purposes because he did not disclose them prior to trial. His proposed witnesses should have been disclosed up front, in discovery. As the court properly determined, defendant's late submission of his witnesses was "inexcusable" and prejudicial to plaintiff. Defendant fails to show the judge's ruling constituted an abuse of discretion.

Pendente Lite Arrears

Prior to trial, the judge ordered defendant to pay plaintiff a monthly total of $4,338 for pendente lite support: Schedule A – $2,544 per month; Schedule B – $590 per month; and an additional $280 per week. At trial, plaintiff withdrew her request for alimony. The judge found defendant's pendente lite arrears totaled $117,126. Defendant contends the judge erred in modifying the initial pendente lite award by $420 per week in unallocated support and not adjusting his arrears due to his decreased income caused by the pandemic. He

claims his sole monthly income source of $1,872 in social security disability income (SSDI), totaling $22,488 annually, is "on par and less than the $25,000 imputed to . . . [p]laintiff for purposes of calculating pendente lite support." He contends the income from his taxicab medallions, permits for driving taxicabs, "terminated due to the pandemic." He argues the judge ignored his support obligation to plaintiff was eighty-one percent of his total income. He also asserts the judge failed to recognize that his reduced income entitled him to a Mallamo[4] credit. We disagree with these contentions.

Pendente lite awards consist of "temporary financial support pending the resolution of the [matrimonial litigation]" which "are subject to modification prior to entry of final judgment and at the time of entry of final judgment." Mallamo, 280 N.J. Super. at 12 (citations omitted). Mallamo authorizes a trial judge to adjust a pretrial award after trial because, after considering the evidence and credibility of the parties, the judge is in a better position to determine whether the means of the parties align with the pretrial award. Id. at 16. However, Mallamo does not require courts to re-assess pretrial orders after trial; the decision only requires that a court may adjust a pretrial order after trial without violating the prohibition against retroactive modification, N.J.S.A.

---

[4] Mallamo v. Mallamo, 280 N.J. Super. 8, 9 (App. Div. 1995).

2A:17-56.23a. 280 N.J. Super. at 17. Applying this standard, the trial judge, based on her credible findings and in exercise of her discretion, did not err in refusing to adjust the pendente lite award through a Mallamo credit to defendant.

Judge Sullivan determined "[d]efendant paid only a portion of the pendente lite support he was ordered to pay and persistently violated . . . [court] [o]rders [to make payments] for two years." The judge rejected defendant's request to vacate his arrears, finding "his vague and incredible testimony about his income, his assets[,] and the assets [he] transferred to Egypt . . . [did not] entitle[] [him] to such relief." The judge determined the taxicab business did not shut down during the pandemic.

The record reveals defendant's medallions were used for taxicabs operating and producing income during the pandemic: a taxicab was involved in a December 2020 accident and a taxicab was issued a ticket for a toll violation in August 2021. The record further undermines defendant's credibility regarding his income. His case information statement indicated total monthly expenses of $2,699 and a total monthly income of $1,872 from SSDI. During cross-examination, however, defendant proffered no reasonable explanation how his expenses could be met with that limited income absent corresponding debt. While plaintiff may not have been able to pinpoint with specificity the amount

10

of defendant's total income, the judge had ample support for finding defendant's insufficient income claims lacked merit and he could pay the pendente lite arrears.

Attorney's Fees

The AFJOD incorporates the judge's order requiring defendant to pay plaintiff's attorney's fees of $45,570. Plaintiff had sought $60,700. Defendant contends the judge misapplied Rule 5:3-5(c) and Mani v. Mani, 183 N.J. 70, 94 (2005), by failing to consider plaintiff's bad faith during the litigation, his dire financial situation caused by the pandemic, and plaintiff's better ability to pay her attorney's fees by the time the trial has ended. He further argues three prior orders requiring him to pay plaintiff's additional attorney's fees constituted "double dipp[ing]," given the AFJOD only acknowledges plaintiff receiving one advance. Defendant, therefore, asserts plaintiff was unjustly enriched by the attorney's fee award, which failed to address the fees he previously paid—a factor to be considered under Rule 5:3-5(c). We reject these arguments.

We will not disturb a family judge's determination as to counsel fees except for the "'rarest occasion,' . . . only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). "[A]n abuse of discretion 'arises when a

decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. R.Y., 242 N.J. 48, 65 (2020) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)) (internal quotation marks omitted). "An abuse of discretion also arises when 'the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Moraes v. Wesler, 439 N.J. Super. 375, 378 (App. Div. 2015) (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)).

A family judge's award of attorney's fees is subject to the provisions of Rule 4:42-9(a)(1), which provides "[i]n a family action, a fee allowance both pendente lite and on final determination may be made pursuant to R. 5:3-5(c)." The judge must consider the following factors:

> (1) the financial circumstances of the parties;
>
> (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party;
>
> (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial;
>
> (4) the extent of the fees incurred by both parties;
>
> (5) any fees previously awarded;

12

(6) the amount of fees previously paid to counsel by each party;

(7) the results obtained;

(8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and

(9) any other factor bearing on the fairness of an award.

[R. 5:3-5(c).]

Judge Sullivan correctly analyzed these factors in her written statement of reasons when awarding plaintiff attorney's fees, applying the same findings she made concerning her distribution of marital assets and pendente lite arrears rulings. Defendant was not in the dire financial situation he claimed but in a much better financial position than plaintiff, thus enabling him to afford her attorney's fees. Defendant's bad faith—dissipation of marital assets in violation of court order, failure to comply with other court orders, and attempt to conceal ownership of the Egyptian properties—constituted a "significant delay, time and expense" in the litigation. Defendant did not submit a certification of the attorney's fees he paid as ordered by the court. Contrary to defendant's assertion, the judge acknowledged defendant's prior advances paying plaintiff's attorney's fees and additional payments of $36,000. Simply put, there is no indication the judge abused her discretion in awarding plaintiff attorney's fees.

To the extent we have not addressed any of defendant's arguments, it is because they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2629-21