**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0343-24

ABEL BANTYIWALU,

    Plaintiff-Appellant,

v.

MELKEMARYAM YIMER,

    Defendant-Respondent.

_____

        Submitted November 5, 2025 – Decided January 12, 2026

        Before Judges Rose and Torregrossa-O'Connor.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-0422-23.

        Herbert & Weiss, LLP, attorneys for appellant (Helene C. Herbert, on the briefs).

        Melkemaryam A. Yimer, self-represented respondent.

PER CURIAM

After trial in this matrimonial action, plaintiff Abel Bantyiwalu appeals from portions of the August 19, 2024 Family Part order for final dual judgment of divorce (FJOD), dissolving his brief marriage to defendant Melkemaryam Yimer. Plaintiff specifically appeals paragraph seventeen of the FJOD, which directed plaintiff to pay defendant $12,000 in equitable distribution—a percentage of funds the court found were marital assets plaintiff depleted or withdrew as cash from several bank accounts both during the marriage and after filing for divorce. Plaintiff also challenges paragraph twenty-one denying his request for counsel fees. After a review of plaintiff's contentions in light of the record and applicable principles of law, we affirm.[1]

---

[1] In addition to challenging paragraphs seventeen and twenty-one, plaintiff's Notice of Appeal identified paragraph fifteen of the FJOD, which concerns the equitable distribution of a Fidelity Investment account. However, plaintiff's brief on appeal does not address or make any arguments concerning distribution of the Fidelity account, nor did plaintiff seek oral argument. As such, we have no basis upon which to assess that portion of the court's order, and deem this issue waived. See Midland Funding, LLC v. Thiel, 446 N.J. Super. 537, 542 n.1 (App. Div. 2016) (when appellant's Notice of Appeal lists issues later "not briefed on appeal," the Appellate Division "considers [the] appeal from those [issues] abandoned . . . [and] waived"); Kerney v. Kerney, 81 N.J. Super. 278, 282 (App. Div. 1963) (when "the Notice of Appeal states [specific] grounds, but the brief completely ignores them and argues other issues," then "there is nothing in the brief to which [this court's] appellate jurisdiction can attach").

We synthesize the following salient facts from the trial record during which only the parties testified.[2]  Both of Ethiopian descent, the parties were married in New Jersey on July 15, 2021, and share one child, L.M.,[3] born in Ethiopia in 2020.  Plaintiff resided in New Jersey and worked for two different employers when, in April 2021, defendant, a trained secretary with a business degree from an Ethiopian university, obtained a "green card,"[4] and, with the parties' child, joined plaintiff in New Jersey.  After roughly thirteen months of marriage, plaintiff filed for divorce on August 11, 2022, alleging irreconcilable differences.

Pertinent to this appeal are plaintiff's financial disclosures in his initial Case Information Statement (CIS) filed on January 19, 2023, and his amended

---

[2]  Issues of custody and support were also addressed at trial and by the FJOD and are not the subject of this appeal.  We note for context the court decided a spectrum of issues, including:  awarding the parties joint legal custody of the child; denying alimony to defendant; designating defendant as the parent of primary residence with weekly parenting time for plaintiff; and setting plaintiff's child support obligation.

[3]  We use initials to protect the identity of the child.  R. 1:38-3(f)(6).

[4]  A permanent resident card, also known as a "green card," allows holders to "live and work permanently in the United States."  Green Card, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/green-card (last visited Jan. 5, 2026).

A-0343-24

CIS filed on April 25, 2024, both of which he affirmed as accurate during trial. In these statements, plaintiff disclosed five bank accounts held solely in his name, to which defendant had no access. Those account balances in plaintiff's 2023 CIS totaled $21,623, and, in the 2024 CIS, the same accounts totaled $1,732.[5] In his 2023 CIS, plaintiff listed $63,180 in assets "Subject to Equitable Distribution"; $195,514 in assets "Not Subject to Equitable Distribution"; $39,528 in liabilities "Subject to Equitable Distribution"; and $34,257 in liabilities "Not Subject to Equitable Distribution." In his 2024 CIS, plaintiff disclosed no potential assets "Subject to Equitable Distribution"; $259,068 in assets "Not Subject to Equitable Distribution"; no liabilities "Subject to Equitable Distribution"; and $7,344 in liabilities "Not Subject to Equitable Distribution."

The parties undisputedly never shared a joint back account. Plaintiff testified he entered the marriage with approximately $100,000,[6] which he classified as "premarital" funds he never intended to convert to marital assets.

---

[5] Of these five accounts, only three are relevant to equitable distribution as discussed below. The balance of these three accounts as reported by plaintiff in his 2023 CIS was $21,104, while the total balance for the same accounts, as reported in his 2024 CIS, was $1,540.

[6] Plaintiff at one point indicated the amount could have been "a little over" $100,000, stating, "[it] could be 100 or 100, 200."

A-0343-24

Plaintiff held the funds in several bank accounts in his name only, for which he remained the sole signatory. He initially explained the account balances, by 2024, had reduced collectively to less than $2,000 based on his "personal use." He then clarified he used the depleted funds to support the "marriage," "family," and himself, and to reduce liabilities, including premarital debt, after he filed for divorce. Plaintiff testified the amounts listed in his initial 2023 CIS reflected the balances of his bank accounts on August 11, 2022, the date he filed for divorce, as he had already spent the rest of the money, retaining approximately $5,000 to $10,000 in "cash" in his "possession." Plaintiff then explained he began to pay down debts after he "file[d] for divorce," clarifying the amounts of liabilities listed in his 2023 CIS were the balances as of December 30, 2022.

During the marriage, defendant worked in "retail" for several months, but plaintiff confirmed none of defendant's income was ever deposited into his bank accounts. Plaintiff indicated he "ha[d] no idea what [defendant] did with the money she earned from her job during the marriage" or whether defendant had her own bank account.

According to plaintiff, only his own money went "in and out" of his bank accounts throughout the marriage. Plaintiff admitted his own paychecks were

occasionally deposited into these accounts, primarily three checking accounts,[7] but he could not further specify when or to which accounts those funds were deposited. He stated he deposited "one or more" paychecks in each of the three checking accounts on a "here and there" basis. He further explained he retained some of these funds in "cash" and "cash[ed] out" paychecks for the couple's rent and utility bills while the parties were married. When the court directly asked "what happened to the $100,000," plaintiff responded, "I used it, . . . it's premarital money."

Plaintiff also testified concerning retirement funds and other investments he characterized as non-marital assets. He referenced a Fidelity Investment account for which he claimed he had no statements, indicating he opened the account three years earlier, before the parties married, and bought and sold stocks within that account during the marriage with his own work income.

Defendant testified and confirmed plaintiff's testimony in significant part. She explained she had no access to plaintiff's bank accounts or knowledge of their contents, stating plaintiff would not allow her to have "any kind of information" about his finances. She recounted working for approximately three

---

[7] The five accounts included three checking accounts at Wells Fargo, Chase Bank, and Bank of America, and two savings accounts, at Wells Fargo and Chase Bank.

A-0343-24

months making minimum wage before she was "forced to stop working" to care for the parties' daughter "because [plaintiff] left the house." She explained plaintiff "intentionally" made the situation "difficult" for her because "he kn[e]w that [she was] new to the country, and . . . c[ould]n't do anything or [was] not capable of doing anything." Defendant claimed her Ethiopian education and training did not translate to work opportunities in the United States, explaining it had "nothing to do with this country[,] it doesn't help at all."

On August 19, 2024, the court rendered oral findings, memorialized by the detailed FJOD. Relevant here, the court identified the bank accounts as assets for potential equitable distribution. The court initially noted plaintiff's failure to disclose "[$]60[,000] and upwards of $100,000 in cash" in his CIS submissions presented a "huge negative credibility issue for . . . plaintiff."[8]

The court addressed in detail each of the N.J.S.A. 2A:34-23.1 equitable distribution factors. The court acknowledged the parties' short-term marriage lasted less than thirteen months, and neither party had any known health issues. The court recognized defendant's limited earning capacity, due to her language

---

[8] The court also found plaintiff's credibility was impacted by his seemingly admitting to committing tax fraud by "claiming his parents as dependents" when they "live[d] in Ethiopia."

barrier and foreign education, relative to plaintiff's because he obtained a degree in the United States and held full-time employment.

The court assessed expenses and noted any liabilities or debts "appear[ed] to be de minimis" because plaintiff subsequently satisfied them. Regarding premarital income and property, the court addressed the bank accounts, finding all five accounts were in plaintiff's name and exclusive control. The court found "defendant had no bank accounts," and plaintiff controlled and managed the finances during the marriage.

The court further determined plaintiff's paychecks for earnings "during the marriage period, [were] clearly marital property, [and] were deposited into one of the[] three accounts," but noted plaintiff could not provide any specificity regarding the amounts deposited or used during the marriage. The court concluded, "as far as [it] c[ould] tell, the cash in these accounts was commingled" and "the difference between the [$]100[,000] plus and the [$]59,552 of debt paid off [wa]s approximately $40,000," which left "approximately [$]40,000 in unaccounted for cash." The court cited plaintiff's testimony indicating he used these funds "to pay marital obligations." As such, the court determined "defendant [wa]s entitled to a portion of the undisclo[sed]

remaining funds which may have been dissipated or may be in some other account which . . . plaintiff has failed to disclose."

In setting the distribution percentage, the court "recogniz[ed] that this [wa]s a short-term marriage," defendant would not receive "any alimony," and defendant "has real financial issues." Thus, the court "award[ed] defendant $12,000 against . . . plaintiff which is 30[%]" of $40,000, "the amount that either . . . plaintiff may still have or which he may have dissipated."

The court also addressed plaintiff's request for counsel fees. The court found defendant had "very limited earnings and finances," and plaintiff knew defendant was solely dependent upon him economically during the marriage. The court noted defendant could not afford her own trial counsel and similarly "ha[d] no ability to pay an award of plaintiff's legal fees." By contrast, the court found "plaintiff ha[d] the financial ability and wherewithal to pay his own legal fees." Thus, the court denied plaintiff's request for legal fees.

## II.

On appeal, plaintiff argues the court erred in finding defendant was entitled to any portion of his $100,000, as it was a premarital asset used during the marriage, and, after filing for divorce, to pay his personal and marital debts. He argues "the monies were not deposited into a joint account, nor was the

money used to buy an asset in both their names." Further, plaintiff contends "there was an obvious disconnect of understanding between the trial judge and plaintiff" and claims he "was spoken to in a punitive and disparaging manner" by the trial court. He also asserts the trial court improperly found plaintiff committed "tax fraud" when he claimed his parents as dependents. Lastly, plaintiff argues the court incorrectly denied his application for counsel fees and deprived him of "an opportunity to submit his application for counsel fees."[9]

## III.

"Our review of a judgment following a bench trial is limited." Accounteks.Net, Inc. v. CKR Law, LLP, 475 N.J. Super. 493, 503 (App. Div. 2023) (citing Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). Findings by a Family Part judge are "binding on appeal when supported by

---

[9] Plaintiff's reply brief also argues defendant's brief is deficient pursuant to Rule 2:6-2(a)(5) and Rule 2:6-4(a), which require the inclusion of references to the record. However, plaintiff did not file a motion to strike defendant's brief, and a reply brief is not a proper vehicle to seek relief. See State v. Smith, 55 N.J. 476, 488 (1970) (reply briefs may only respond to respondent's briefs, other "use of a reply brief is improper"); see also Berardo v. City of Jersey City, 476 N.J. Super. 341, 354 (App. Div. 2023) ("'Raising an issue for the first time in a reply brief is improper[]' [as] 'appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available.'"); see also Domanske v. Rapid-Am. Corp., 330 N.J. Super. 241, 251-52 (App. Div. 2000) (addressing deficiencies in a respondent's brief raised via motion to strike).

adequate, substantial, and credible evidence." Cesare v. Cesare, 154 N.J. 394, 412 (1998). Additionally, "because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413. Further, "because a trial court hears the case, sees and observes the witnesses, and hears them testify, it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Id. at 412 (alterations and internal quotation marks omitted). A family court's credibility determinations relating to equitable distribution warrant particular deference when supported by evidence in the record. See M.G. v. S.M., 457 N.J. Super. 286, 298 (App. Div. 2018); Clark v. Clark, 429 N.J. Super. 61, 71-72 (App. Div. 2012). However, a "court's legal conclusions [are] always [reviewed] de novo." Clark, 429 N.J. Super. at 71 (citing Balsamides v. Protameen Chems., 160 N.J. 352, 373 (1999)).

In reviewing a trial court's determination as to which assets are available for equitable distribution or the valuation of those assets, "an appellate court may determine whether the amount and manner of the award constituted an abuse of the trial judge's discretion." Borodinsky v. Borodinsky, 162 N.J. Super. 437, 444 (App. Div. 1978). Although the Family Part "has broad discretion in . . . allocating assets subject to equitable distribution, . . . the court must

11

provide factual underpinnings and legal bases supporting the exercise of judicial discretion." Clark, 429 N.J. Super. at 71-72.

## A.

Plaintiff first argues the court erred in ordering equitable distribution of his bank account funds. Well-settled principles guide our review. "Any property owned by a husband or wife at the time of marriage will remain the separate property of such spouse and in the event of divorce will not qualify as an asset eligible for distribution." Painter v. Painter, 65 N.J. 196, 214 (1974). Further, "it shall be a rebuttable presumption that each party made a substantial financial or nonfinancial contribution to the acquisition of income and property while the party was married." N.J.S.A. 2A:34-23.1.

Importantly, "the commingling of separate funds . . . with marital property [can] convert[] those funds into marital property." Ryan v. Ryan, 283 N.J. Super. 21, 25 (App. Div. 1993) (citing Canova v. Canova, 146 N.J. Super. 58, 62 (Ch. Div. 1976)). For example, an account opened before a marriage by one party and maintained solely in that party's name can lose its exemption when the account is used during the marriage for marital expenses, employment earnings were deposited into the account, and the party seeking to exclude the asset has not provided sufficient documentation to establish exemption from

12

equitable distribution.  See Tannen v. Tannen, 416 N.J. Super. 248, 281-83

(App. Div. 2010).

Courts making equitable distribution determinations

shall consider, but not be limited to, the following factors:

a.  The duration of the marriage or civil union;

b.  The age and physical and emotional health of the parties;

c.  The income or property brought to the marriage or civil union by each party;

d.  The standard of living established during the marriage or civil union;

e.  Any written agreement made by the parties before or during the marriage or civil union concerning an arrangement of property distribution;

f.  The economic circumstances of each party at the time the division of property becomes effective;

g.  The income and earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living

13

reasonably comparable to that enjoyed during the marriage or civil union;

h. The contribution by each party to the education, training or earning power of the other;

i. The contribution of each party to the acquisition, dissipation, preservation, depreciation or appreciation in the amount or value of the marital property, or the property acquired during the civil union as well as the contribution of a party as a homemaker;

j. The tax consequences of the proposed distribution to each party;

k. The present value of the property;

l. The need of a parent who has physical custody of a child to own or occupy the marital residence or residence shared by the partners in a civil union couple and to use or own the household effects;

m. The debts and liabilities of the parties;

n. The need for creation, now or in the future, of a trust fund to secure reasonably foreseeable medical or educational costs for a spouse, partner in a civil union couple or children;

o. The extent to which a party deferred achieving their career goals; and

p. Any other factors which the court may deem relevant.

[N.J.S.A. 2A:34-23.1.]

Regarding N.J.S.A. 2A:34-23.1(i), courts making determinations as to the dissipation of marital assets most often consider

> (1) the proximity of the expenditure to the parties' separation, (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage, (3) whether the expenditure benefitted the "joint" marital enterprise or was for the benefit of one spouse to the exclusion of the other, and (4) the need for, and amount of, the expenditure.
>
> [Kothari v. Kothari, 255 N.J. Super. 500, 507 (App. Div. 1992) (quoting Lee R. Russ, Annotation, Spouse's Dissipation of Marital Assets Prior to Divorce as Factor in Divorce Court's Determination of Property Division, 41 A.L.R.4th 416, 421 (2025)).]

These factors aid courts in making the pivotal determination: "Whether the assets were expended by one spouse with the intent of diminishing the other spouse's share of the marital estate." Ibid.

Here, the family court comprehensively assessed the chronology of plaintiff's bank account balances, cash assets, and liabilities and determined the bank account funds had been commingled and were therefore subject to equitable distribution. Although the exact amount of plaintiff's deposited earnings is unknown, the court relied on plaintiff's testimony and CIS averments and reasonably concluded plaintiff deposited some of those wages into these accounts and used these accounts to "support the family." The court's findings

that plaintiff used approximately $60,000 of the $100,000 to pay off $59,552 in debts and liabilities after filing for divorce, yet left a remainder of only $1,540 in the three checking accounts where plaintiff deposited his income, were sufficiently anchored in the record. Thus, we discern no abuse of discretion in the court's determining plaintiff had removed or dissipated $40,000 of the $100,000 prior to and after filing for divorce. We similarly perceive no error in the trial court's negative credibility inferences, placing weight on plaintiff's failure to disclose the $100,000 in the CIS and inaccurate representations in plaintiff's tax filings.

Further, we conclude the record amply demonstrates the court carefully examined and made specific findings as to each of the prescribed N.J.S.A. 2A:34-23.1 factors before awarding defendant 30% of the undisclosed and unaccounted-for $40,000. In arriving at that percentage, the court "recogniz[ed] that this [wa]s a short-term marriage, . . . that the court [did] not grant[] . . . defendant any alimony[,] and . . . defendant ha[d] . . . real financial issues." We see no basis to disturb the court's fair determination regarding equitable distribution of the bank account assets in these circumstances.

B.

We next address and reject plaintiff's contention the trial court erred in denying his requested counsel fees. In support of his claim, plaintiff cites no law or facts, and states only "plaintiff was not given an opportunity to submit his application for counsel fees and seeks to do so." Because plaintiff has provided no support for his assertion, we are unable to discern any error or basis for relief.

Indeed, "the award of counsel fees and costs in a matrimonial action rests in the discretion of the [trial] court." Williams v. Williams, 59 N.J. 229, 233 (1971). We will disturb a counsel fee determination "only on the 'rarest occasion,' and then only because of clear abuse of discretion[,]" Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)), or "a clear error in judgment," Tannen, 416 N.J. Super. at 285. Courts must consider each party's financial situation and ability to pay, and the parties' good faith. Williams, 59 N.J. at 233; see also Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990).

Applying this deferential standard, we perceive no such clear abuse of discretion or error in judgment. The court emphasized the financial disparity between the parties as the primary basis for its decision, emphasizing

17

defendant's complete financial dependence on plaintiff throughout the marriage. The record demonstrated plaintiff's superior financial situation and ability to pay counsel fees due to his employment. Conversely, the court found and the record showed defendant was unable to pay counsel fees of her own, and would be similarly unable to pay plaintiff's. Accordingly, we are satisfied the court's determination was sound.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0343-24